## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

MELISSA SCHEEREN

[Address filed under seal pursuant to local rule LCvR 5.1]

*Plaintiff*,

v.

U.S. DEPARTMENT OF EDUCATION
400 Maryland Avenue, SW
Washington, DC 20202;

LINDA MCMAHON, in her official capacity as SECRETARY OF EDUCATION
400 Maryland Avenue, SW
Washington, DC 20202;

and

THE HIGHER EDUCATION LOAN AUTHORITY OF THE STATE OF MISSOURI
633 Spirit Drive
Chesterfield, MO 63005

*Defendants*.

**Civil Action No. 1:26-cv-1659**

**JURY TRIAL DEMANDED**

## COMPLAINT

Plaintiff Melissa Scheeren, by and through her counsel, brings this action against the Department of Education, Secretary of Education Linda McMahon in her official capacity, and the Higher Education Loan Authority of the State of Missouri and alleges the following based upon information, belief, and the investigation of her counsel:

## PRELIMINARY STATEMENT

1. Melissa Scheeren was entitled to have her federal Direct student loans discharged when she applied in September 2022 based on more than a decade of public service including nine years working for the Fairfax Bar Association (FBA) as an Associate Law Librarian and then as a Pro Bono Assistant for the Northern Virginia Pro Bono Law Center (Law Center).

2. On October 24, 2022, MOHELA denied Scheeren's PSLF application by inaccurately informing her that her employer was a for-profit business. It was not.

3. Since then, Scheeren's efforts to obtain this discharge have been extraordinary. Scheeren provided detailed, thoughtful, and actionable information across multiple PSLF applications, reconsideration requests, and complaints to the Department and her student loan servicer. At each turn, these submissions were met with little more than a cursory review and dismissed without any analysis of the underlying eligibility of her employer.

4. The Department of Education (the Department) and the Higher Education Loan Authority of the State of Missouri (MOHELA) routinely and systematically failed to honor Scheeren's public service loan forgiveness (PSLF) benefits. During this time, both defendants took an astonishingly long time to respond to Scheeren at every turn, wrongfully denied her PSLF applications, and misled her about the status of her applications, despite Scheeren's strict compliance with the Department's procedures.

5.      Nonprofit 501(c)(6) organizations like the FBA are considered eligible employers for PSLF purposes if they provide, among other services, "public interest law services, public education, [or] public library services," under the operative PSLF regulations when Scheeren submitted her PSLF applications.

6.      Despite providing the Department and MOHELA with FBA's articles of incorporation, bylaws, public-facing website content, and a letter from the organization's Executive Director all reflecting that the FBA's work clearly meets the regulatory requirements, the Department and MOHELA continued to deny her requests.

7.      In some cases, the defendants simply did not respond to her requests and in other cases denied her for clearly erroneous reasons like, "We determined that your employer is a for-profit organization…" or that the FBA does, "not provide a public service."

8.      The staggering degree to which the Department and MOHELA failed is well documented and at times their communications so ungrounded that they suggest these organizations were evaluating entirely different documents than what Scheeren submitted.

9.      The cost of this misconduct is clear and direct. After more than three years of submissions, requests for reconsideration, complaints, and dozens of phone calls, costing her more than a hundred hours of time, Scheeren has been forced to pay $16,140.71 on loans that should have been discharged.

## JURISDICTION AND VENUE

10.      This court has subject matter jurisdiction pursuant to 28 U.S.C. §1331 because Plaintiff's claims arise under federal law including the Administrative Procedure Act, 5 U.S.C. § 706. The court has supplemental jurisdiction over state law claims against MOHELA under 28

U.S.C. § 1367 because the claims form part of the same case or controversy as the claims under federal law.

11.    At all times material to the time frames set forth in this Complaint, Defendant MOHELA regularly conducted substantial business within the District of Columbia, and the contracts are with the Department of Education, located in the District of Columbia. Under the operative contracts, MOHELA invoices the Department of Education at the office housing Federal Student Aid Administration, located in the District. Plaintiff's claims arise from MOHELA's role as the federally-contracted PSLF servicer, performed under and pursuant to a contract administered in this District. MOHELA is thus subject to personal jurisdiction in the District of Columbia.

12.    The Department of Education is headquartered at 400 Maryland Ave. SW, Washington DC 20202. Defendants McMahon and the Department of Education are thus subject to personal jurisdiction in the District of Columbia.

13.    Venue is proper in this district pursuant to 28 U.S.C. § 1391 because the Department of Education reside in this District and Defendant McMahon is an officer or employee of the United States. In addition, a substantial part of the events or omissions giving rise to the claim occurred in this District. At all times material to the time frames set forth in this Complaint, Defendants conducted and conduct business throughout the District of Columbia. Documents and witnesses related to this complaint and the related to the federal contracts discussed are also likely to be located in the District of Columbia.

## PARTIES

### *Plaintiff*

14.     Plaintiff Melissa Scheeren is a resident of Virginia. Scheeren graduated from law school in 2008 and worked for the FBA from March 2008 until February 10, 2017 when she left to work for Arlington County. Scheeren worked for two of the FBA's consumer facing programs; first as an Associate Law Librarian at the Fairfax Public Law Library and then as a Pro Bono Assistant Northern at the Virginia Pro Bono Law Center.

15.     Initially after leaving FBA, Scheeren worked part-time for Arlington County but moved into a full-time role in April 2018 and continued in that role through August 2021. She then worked for the Library of Congress from August 2021 through December 2022 and the University of Virginia until the present.

16.     Based on this work, Scheeren was eligible for PSLF discharge upon consolidation of her loans in November 2021 and should have been approved when she applied in September of 2022.

### *Department of Education*

17.     Defendant United States Department of Education is a federal agency with its principal place of business at 400 Maryland Avenue SW, Washington, D.C. Defendant is responsible for administering federal student loan and grant programs in the United States.

18.     Defendant Linda McMahon is the Secretary of Education (Secretary). Plaintiff sues Secretary McMahon in her official capacity. Secretary McMahon is charged with the supervision and management of all decisions and actions of the United States Department of Education, and so all allegations in this complaint against the Department of Education are made against her.

### *MOHELA*

19.     Defendant MOHELA is one of the largest student loan servicers in the United States.  MOHELA is headquartered in Missouri, maintains an office in the District of Columbia, and currently employs hundreds of individuals across the country who work remotely in other states.

20.     MOHELA was established in 1981 pursuant to the Missouri Higher Education Loan Authority Act, Title XI, Chapter 173, Section 173.350 to 173.445 of the Missouri Revised Statutes, inclusive, as amended (the "Authorizing Act"), as "a public instrumentality and body corporate" and its exercise of the authority granted it was "deemed to be the performance of an essential public function."  Mo. Rev. Stat. § 173.360.

21.     Under its Authorizing Act, MOHELA can sue and be sued in its own name.  Id. § 173.385.1(3).

22.     MOHELA's assets are not part of the state of Missouri's revenue and cannot be used for the payment of Missouri's debts.  Id. §§ 173.386, 173.425.  Missouri, in turn, cannot be liable for MOHELA's debts.  Id. § 173.410.  The vast majority of MOHELA's funds are segregated from state funds and controlled exclusively by MOHELA as a self-sustaining and financially independent entity.  MOHELA can contract with any federal or state agency, including with the state of Missouri.  Id. § 173.385.

23.     Pursuant to its contract with ED, as of December 31, 2025, MOHELA services approximately $318.5 billion in Direct Loans and ED-owned FFELP loans representing more than seven million accounts for borrowers across the country.[1]  In this role, MOHELA is responsible for, among other things:

---

[1] Off. of Fed. Student Aid, U.S. Dep't of Educ., *Federal Student Loan Portfolio by Loan Servicer and Loan Status* (data as of Dec. 31, 2025), https://studentaid.gov/sites/default/files/fsawg/datacenter/library/servicer-portfolio-by-loan-status123125.xls

a.    Receiving scheduled periodic payments from borrowers or notification that borrowers made a scheduled periodic payment and applying payments to borrowers' accounts pursuant to the terms of the student loan or the contract governing servicing.

b.    During periods when no payment is required, maintaining account records for the student loans and communicating with borrowers regarding the student loan on behalf of the Department of Education.

c.    Interacts with qualified education loan borrowers as defined by the Code of Virginia § 6.2-2600.

24.    On July 1, 2022, MOHELA became the interim PSLF program federal servicer on behalf of ED. Under this contract, MOHELA was paid a flat rate for each PSLF application it processed. As of July 1, 2024, ED transitioned the administration of the PSLF program to a different model whereby the multiple student loan servicers are now responsible for processing PSLF applications under a separate contract.

**BACKGROUND**

***Public Service Loan Forgiveness Original Regulations***

25.    Federal law provides loan cancellation for public service workers who have worked for ten years in eligible public service jobs while making eligible payments on their loans. 20 U.S.C. § 1087e(m)(1). Congress designed the PSLF program to encourage talented and well-trained individuals to work in traditionally lower paying public service careers. Public interest legal services and public library services were core concerns of Congress as one of the statutorily required fields identified in the College Cost Reduction and Access Act of 2007 establishing the program.

26.     The PSLF statute states: that the Secretary of Education "shall cancel the balance of interest and principal due . . . on any eligible Federal Direct Loan" for a borrower who "has made 120" eligible "monthly payments on the eligible Federal Direct Loan after October 1, 2007" and "has been employed in a public service job during the period in which the borrower ma[de] each of the 120 payments." 20 U.S.C. § 1087e(m)(1).

27.     Under the statute, a public service job includes a full-time job in government (including military service and law enforcement), a 501(c)(3) organization, or in the fields of emergency management, public safety, public health, public education, social work in a public child or family service agency, public interest law services, early childhood education, public service for individuals with disabilities, public service for the elderly, public library sciences, school-based library sciences and other school-based services. 20 U.S.C. § 1087e(m)(3).

28.     The Secretary has issued implementing regulations for the PSLF statute which further requires the Secretary to provide loan discharges to borrowers who have satisfied the eligibility criteria.

29.     Between 2008 when the Department promulgated the first PSLF regulations through July 1, 2023, the PSLF regulations defined "public service organization" to include, among others, a private organization that provides "public library services." *See* 73 Fed. Reg. 63,232, 63,257 (Oct. 23, 2008); 74 Fed. Reg. 55,972 (Oct. 29, 2009); 77 Fed. Reg. 76,414 (Dec. 28, 2012); 80 Fed. Reg. 67,204 (Oct. 30, 2015); 85 Fed. Reg. 49,798 (Aug. 14, 2020). It also includes private organizations that provide "public education" and "public interest law services." *Id*. So long as those organizations are not businesses organized for profit, a labor union, or a partisan political organization.

30.     Thus, a borrower's eligibility for the PSLF Program is "not determined by her job responsibilities, but rather by whether her employer qualifies as a 'public service organization.'" *Am. Bar Ass'n v. U.S. Dep't of Educ.*, 370 F. Supp. 3d 1, 11-12 (D.D.C. 2019).

### *American Bar Association v. United States Department of Education*

31.     Nearly a decade ago, the American Bar Association and a group of individual plaintiffs brought an action against the Department of Education claiming that the Department impermissibly added new criteria for evaluating employer eligibility resulting in PSLF denials for the individual plaintiffs. *See ABA*, 370 F. Supp. 3d 1. After initially approving employer certification forms for the individual plaintiffs, beginning in 2015, these plaintiffs "began to receive letters from the Department that denied their eligibility…on the basis that the Department," could not find evidence that the ABA, "provides a qualifying service for the PSLF program." *Id*. at 13-14.

32.     The Department caused these denials by adding a new 'primary purpose' standard to evaluate whether non-501(c)(3) nonprofit employers were qualified employers for PSLF purposes. *Id*. at 33-34.

33.     This case established two important aspects of the relevant PSLF regulation. First, it vacated the newly developed Primary Purpose standard leaving in place the regulation which provided eligibility to organizations that provide one of the enumerated services even if that service was not the organization's primary purpose. *Id*. Indeed, this understanding of the regulation was acknowledged as recently as 2022 when the Department adopted new PSLF regulations. *Institutional Eligibility Under the Higher Education Act of 1965, as Amended; Student Assistance General Provisions; Federal Perkins Loan Program; Federal Family*

*Education Loan Program; and William D. Ford Federal Direct Loan Program*, 87 Fed. Reg. 65,904, 66,973 (Nov. 1, 2022).

34.     Second, in considering this action, this court addressed the Department's obligations to evaluate PSLF employer eligibility under the Administrative Procedure Act and found that PSLF denials were final agency actions. *ABA*, 370 F. Supp. 3d at 27.

### *Public Service Loan Forgiveness Reconsideration*

35.     PSLF regulations also provide for a reconsideration process whereby borrowers may request that the Secretary of Education, "reconsider whether the borrower's employer… meets the requirements for credit toward forgiveness." 34 CFR § 685.219 (g)(1).

36.     To evaluate these requests, the Secretary considers any relevant evidence obtained by the Secretary and additional supporting documentation. 34 CFR § 685.219(g)(2). Once the Secretary notifies the borrower of the reconsideration decision and the reason for that decision, the "Secretary's decision is final," Meaning that it acts as a final agency action under the APA. 34 CFR § 685.219 (g)(5).

### *Virginia Student Loan Borrower Bill of Rights*

37.     The Virginia Student Borrower Bill of Rights ("BBOR"), codified at Va. Code Ann. §§ 6.2-2600 to 6.2-2622, was enacted in 2020 to subject student loan servicers to regulations similar to the baseline consumer-protection that Virginia has long applied to other consumer-finance providers — including banks, credit unions, and mortgage lenders — and to address documented servicer misconduct affecting more than one million Virginia borrowers who collectively owe tens of billions of dollars in student loan debt.[2]

---

[2] 2020 Va. Acts chs. 1198 (HB 10), 1250 (SB 77); Va. Legis. Info. Sys., Bill Summary, HB 10 / SB 77 (2020 Reg. Sess.), https://lis.virginia.gov/cgi-bin/legp604.exe?201+sum+HB10= ; *see also* Press Release, Sen. Janet Howell, *Virginia Senate Passes Student Loan Borrowers' Bill of Rights* (Feb. 4, 2020) (explaining that virtually every other

38.     The BBOR establishes a licensing regime administered by the State Corporation Commission's Bureau of Financial Institutions, Va. Code Ann. § 6.2-2601, sets substantive standards of conduct for licensed servicers, *id.* §§ 6.2-2610, 6.2-2611, and provides borrowers with a private right of action against servicers who fail to comply with those standards, *id.* § 6.2-2619.

39.     The BBOR prohibits qualified education loan servicers from "[d]irectly or indirectly employ[ing] any scheme, device, or artifice to defraud or mislead" borrowers, and from engaging in any unfair or deceptive act or practice or omitting material information in connection with the servicing of a qualified education loan — including misrepresentations regarding the amount, nature, or terms of any fee or payment claimed to be due, the terms and conditions of the loan agreement, or the borrower's obligations under the loan. Va. Code Ann. § 6.2-2610(A)(1)–(2). The BBOR likewise prohibits misapplication of payments. *Id.* § 6.2-2610(A)(4).

40.     The BBOR separately prohibits servicers from engaging in "abusive" acts or practices in connection with the servicing of a qualified education loan. An act or practice is abusive if it materially interferes with the borrower's ability to understand a term or condition of the loan, or if it takes unreasonable advantage of (i) the borrower's lack of understanding of the material risks, costs, or conditions of the loan; (ii) the borrower's reasonable reliance on the servicer to act in the borrower's interests; or (iii) the borrower's inability to protect her own interests when selecting a feature, term, or condition of the loan. Va. Code Ann. § 6.2-2610(C).

41.     The BBOR further imposes affirmative duties on servicers, including the obligation to respond to written borrower inquiries within prescribed time periods, and to comply

---

category of consumer debt in Virginia was already subject to state regulation but that student loan servicing was not, despite over one million Virginia borrowers carrying more than $41 billion in student loan debt).

with all applicable federal laws and regulations governing student-loan servicing — any violation of which independently constitutes a violation of the BBOR and an independent basis for enforcement action. Va. Code Ann. §§ 6.2-2610(B), 6.2-2611.

### *Fairfax Bar Association*

42. The FBA operates the Fairfax Public Law Library, which provides visitors free access to legal information, reference services, and a large collection of print and electronic legal resources that are often impossible (or so expensive as to be practically impossible) to access through any other means. Visitors frequently include self-represented litigants, non-attorney researchers, attorneys, judges, law clerks, and other members of the public.

43. As a librarian, Scheeren operated the reference desk, answering legal reference questions, directing patrons to various parts of the court, helping patrons use legal databases, and helping patrons find information to pursue their cases, among other responsibilities. She provided these services both in person and by phone.

44. The FBA also operates the Law Center which provides public interest legal services through its Law Panels, Neighborhood Outreach Program, Wills on Wheels, Uncontested Divorce Program, Family Legal Assistance Project, and Nonprofit Legal Support Program.

45. As the Pro Bono Assistant, Scheeren supported the mission by connecting clients with attorneys willing to take cases pro bono, organized continuing legal education courses for attorneys who wanted to offer their services pro bono, and screened contested family law matters to determine whether the Law Center could connect individuals with pro bono representation.

## FACTUAL ALLEGATIONS

### *Fairfax Bar Association is a Qualified Employer for PSLF*

46. At the time Scheeren applied for PSLF, a private organization was considered a qualified PSLF employer if it 1) provides one of the enumerated public services and 2) is not a business organized for profit, a labor union, or a partisan political organization.  *See* 34 C.F.R. § 685.219(b) (2022)*; see also Public Service Loan Forgiveness Program,* 85 Fed. Reg. 49,798, 49,821 (Aug. 14, 2020).

47. FBA is a nonprofit 501(c)(6), is not a labor union and is not a partisan political organization. Exhibit 5.

48. The only factual question is whether FBA is a "private organization that provides" one of the 12 enumerated services in the regulation. Among those services are public interest law services, public education, and public library services.

49. First, FBA clearly provides public library services. Library access is free, open to the public, and serves more than 50,000 individuals each year – many of whom are not lawyers. "Public Law Library" is literally in the name. Clifton Barnes, *In Defense of Print: Law Libraries Not Obsolete, Bar Leaders Say*, Bar Leader, Sept.–Oct. 2007, https://www.americanbar.org/groups/bar-leadership/resources/bar-leader-magazine/2007-2008/3201/ (last visited May 13, 2026).

50. Library staff, including Scheeren, report directly to the Executive Director of the FBA.

51. The FBA also provides public education services through the Law Center's law panels, neighborhood outreach program, family legal assistance project, and nonprofit legal support.

52. FBA provides public interest legal services directly and through the Law Center. FBA also operates the Law Center which provides a range of legal services including Wills on Wheels, an Uncontested Divorce Program, and the Family Legal Assistance Project among others.

53. FBA staffs volunteer attorneys for the Fairfax Law Foundation's Conciliation Program to, "help resolve motions and other preliminary disputes without charge," for all civil discovery disputes, visitation and emergency visitation orders, modifications to scheduling orders, and in other matters at the discretion of the court. The website explains that the program is, "provided **solely as a public service** by the Fairfax Bar Association…" *Conciliation Program*, Fairfax Law Found., https://www.fairfaxlawfoundation.org/page/4 (last visited May 13, 2026) (emphasis added).

54. Finally, FBA is funded in whole or in part by a local, state, Federal, or Tribal government. Funding for the Law Center comes from, in part, the Fairfax County Consolidated Community Funding Pool, a grant funding program run by Fairfax County.

55. The Fairfax Public Law Library is supported in-kind by the County government insofar as the Fairfax County Circuit Court building has been the host of the library for more than 50 years and the library's fixtures are owned by the County. The library also receives direct funding from both Fairfax County and from civil filing fees from the County Court.

56. Fairfax County supported the FBA in other ways too. While working for the Fairfax Public Law Library, Fairfax County provided Scheeren's email address using its own domain.

### *MOHELA Mishandled Scheeren's PSLF Application Process*

57. Scheeren's account was assigned to MOHELA for servicing August 18, 2022, and continuously serviced by MOHELA until May 14, 2024. Exhibit 19.

58. During that time, MOHELA was the dedicated PSLF servicer and made continuous and regular errors in handling Scheeren's PSLF applications, complaints, phone calls, and reconsideration requests. MOHELA was responsible for making most employer eligibility determinations, communicating with borrowers about the program, and providing accurate

information about the total number of eligible payments borrowers made toward PSLF discharge.

59. The precise allocation of responsibility between MOHELA and the Department for individual determinations described below and for delays in processing is not knowable to Plaintiff without discovery. Some communications were issued under MOHELA letterhead but reflected determinations made by the Department; others appear to have originated entirely with MOHELA. The factual allegations below reflect Plaintiff's best understanding based on available records.

60. Scheeren submitted her first PSLF application (PSLF Application 1) on September 2, 2022, and indicated on the form that she believed she was immediately eligible for loan discharge. Exhibit 1. Scheeren attached FBA's bylaws to the application. *Id.*

61. After more than a month of waiting for a determination, on October 13 Scheeren called only to be placed on hold for more than 2 hours making it impossible for her to talk with a representative.

62. On October 24, MOHELA issued a denial letter to Scheeren with two clearly erroneous justifications for the denial and contradictory guidance on next steps. First, the letter explained that the form submitted did not include responses to questions nine through twelve when in fact it did. Exhibit 2.

63. Second, the letter explained that MOHELA had "determined that your employer is a **for-profit organization**, which does not qualify for PSLF…" (emphasis added). *Id.* The letter explained that if Scheeren believed that her employer was "a not-for-profit organization and would like [MOHELA] to reconsider your request, please submit a new PSLF Form…" and to

include documentation of the not-for-profit status and the nature of the services provided. *Id.* The letter recommended submitting the organization's articles of incorporation and bylaws. *Id.*

64. The same day, Scheeren submitted a second PSLF application (PSLF Application 2) containing public information available on FBA's website and a copy of the association's bylaws confirming the nonprofit status and services the organization provided. Exhibit 3 & 4. MOHELA provided no communications to Scheeren about this application and no determination was made for more than a year when it was ultimately denied in November 2023. Exhibit 4.

65. After seven weeks without a reply on PSLF Application 2, Scheeren submitted a third PSLF application (PSLF Application 3) that included, in addition to the previously submitted bylaws, FBA's articles of incorporation and a letter from the Executive Director of the FBA explaining that the Fairfax Public Law Library is a "*public library* that makes legal information available to the public free of charge." Exhibit 5 (emphasis in original). Scheeren never received a response to this application, and it remains open on the Department's website. Exhibit 6.

### *The Department Denied PSLF Applications Without Reason and in Violation of its own Regulations*

66. In the meantime, worried about her finances and the impending return to repayment after the extended COVID forbearance, Scheeren called MOHELA and the Department on multiple occasions. Neither organization provided accurate information about the timeline for making a determination or about appropriate next steps.

67. On July 13, 2023, after nine months of waiting on MOHELA to process PSLF Application 2 and seven months to process PSLF Application 3, Scheeren submitted a reconsideration request to the Department of Education to try and get her original application (PSLF Application 1) reviewed more closely and approved. Exhibit 7. This reconsideration was

denied five days later in a particularly misleading communication that explained that the FBA was either already considered an eligible employer or that the Department had not made a determination. Exhibit 8.

68. In response, Scheeren submitted a complaint (Complaint 1) on August 4, 2023, through the Department's feedback system attaching the FBA articles of incorporation and the FBA bylaws. Exhibit 9. In the complaint, Scheeren pleads with the Department to make an eligibility determination for FBA and explains the urgency of the situation because she is facing, "the prospect of making monthly payments that, under the applicable laws and regulations, [she does] not owe." *Id.*

69. Twelve days later the Department summarily dismissed the complaint, explaining that there is already a feedback case related to this issue. Exhibit 10. However, the case referenced in that letter appears to be a ghost. There is no record of that complaint in any files available to Scheeren on the Department's website and neither MOHELA nor the Department communicated any response to this Ghost Complaint at any point. *See* Exhibit 20.

70. On September 7, 2023, Scheeren requested that the denial of Reconsideration 1 be escalated to the Federal Student Loan Ombudsman. Exhibit 11. In the request, Scheeren referenced Complaint 1 and the Ghost Complaint. *Id.*

71. On October 27, 2023, Scheeren received an email from the Department saying that FBA was not an eligible organization because it, "does not provide a public service." Exhibit 12. The email contained no other explanation of that determination and does not reference which application, complaint, or reconsideration it was in response to.

72. Two weeks later, Scheeren filed another reconsideration request (Reconsideration Request 2), asking the Department to reverse its determination about the eligibility of the FBA.

Exhibit 13 & 14. In the reconsideration request, Scheeren explains the operative regulatory scheme and information showing that the Department's determination was clearly erroneous. *Id.*

73. Having not received any response to Reconsideration Request 2, Scheeren filed another complaint (Complaint 2) with the Department two months later on January 30, 2024, once again explaining the erroneous nature of the Department's determination and requesting that the Department consider FBA to be an eligible employer and grant her PSLF discharge. Exhibit 15. In the complaint Scheeren attached Reconsideration Request 2.

74. Neither MOHELA nor the Department responded to this complaint for more than a year.

75. On March 27, 2024, the Department emailed a denial of Reconsideration Request 2. The denial simply explained that the FBA is not a qualifying employer because, "it is a not-for-profit organization that does not provide a qualifying public service." Exhibit 16.

76. Scheeren did not see the reconsideration denial because it got buried among other emails in her inbox but followed up on Complaint 2 requesting additional information in August, October, November, and December of 2024 and again in January of 2025 without response. Exhibit 15.

77. Finally, on February 27, 2025, either the Department or MOHELA closed the complaint by providing Scheeren with a form letter explaining how the PSLF program works generally. Exhibit 16. The letter contained no reference to any document or communication Scheeren provided over the prior year. *See Id.*

### CAUSES OF ACTION

78. Some details about the responsibility of specific actions related to Scheeren's PSLF applications and processing are unknown to the Plaintiff. Specifically, Plaintiff does not have records showing whether MOHELA alone, the Department of Education alone, or some

combination of the two entities are responsible for the final decision related to PSLF

Applications 1, 2, and 3 or the delays in processing those forms or responding to complaints.

Therefore, as it relates to illegal conduct specific to the denials, Plaintiff alleges two alternative

causes of action. To the extent the Department of Education is responsible, Plaintiff's First and

Second cause of action allege that these wrongful denials constitute a violation of the

Administrative Procedures Act. To the extent that MOHELA is responsible, Plaintiff's Third and

Fourth cause of action allege that these wrongful denials and processing delays constitute a

violation of the Virginia Student Loan Borrower Bill of Rights.

79. To the extent MOHELA is responsible for delays in processing, Plaintiff's Third and

Fourth cause of action allege those delays constitute a violation of the Virginia Student Loan

Borrower Bill of Rights.

80. Plaintiff also alleges additional violations of the Virginia Student Loan Borrower Bill of

Rights in the Third, Fourth, and Fifth cause of action which are not dependent on which party

was responsible for the final PSLF determination or processing delays.

## FIRST CAUSE OF ACTION
*Agency Action that is Arbitrary, Capricious, or Otherwise not in Accordance with Law in
Violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A)*

81. The APA prohibits agency action that is "arbitrary, capricious, an abuse of discretion, or

otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

82. The Department's denials or constructive denials of Plaintiff's requests that the

Department approve the FBA as a qualified employer, consider payments made while employed

by FBA qualifying payments, and ultimately grant PSLF discharge constitute final agency

actions under the APA.

83. The Department's denial or constructive denial of Plaintiff's requests that the Department make corrections to PSLF determinations through the reconsideration and complaint process constitute final agency actions under the APA.

84. The Department has acted in a manner that is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law by, among other actions:

    a.  Denying Scheeren's PSLF applications dated September 2, 2022, and October 24, 2022 (PSLF Applications 1 and 2).

    b.  Denying Scheeren's reconsideration requests submitted in early 2023 and November 13, 2023 (Reconsideration Requests 1 and 2)

    c.  Refusing to make any adjustments to prior determinations of the FBA's employer eligibility in response to Complaint 2

    d.  Denying Scheeren's renewed reconsideration request by the Ombudsman's group in her email dated September 7, 2023

## SECOND CAUSE OF ACTION
*Unlawful Withholding of Agency Action in Violation of the Administrative Procedure Act, 5 U.S.C. § 706(1)*

85. The APA authorizes this Court to "compel agency action" that has been "unlawfully withheld." 5 U.S.C. § 706(1).

86. As alleged above, the Secretary has a mandatory statutory and regulatory duty to fully process all PSLF applications and reconsideration requests.

87. The Department is currently withholding agency action by refusing to make a determination about Scheeren's December 12, 2022, PSLF application which included additional documentation of FBA's eligibility as a PSLF qualified employer (PSLF Application 3).

## THIRD CAUSE OF ACTION
*Unfair Acts or Practices in Violation of the Code of Virginia § 6.2-2610(A)(2)*

88. MOHELA is a qualified education loan servicer as defined by Code of Virginia *§ 6.2-2600.*

89. Plaintiff Scheeren is a qualified education loan borrower as defined by Code of Virginia *§ 6.2-2600.*

90. Scheeren's federal student loans are qualified education loans as defined by Code of Virginia *§ 6.2-2600.*

91. By denying Plaintiff Scheeren's PSLF Application 1 and Application 2 for clearly erroneous reasons MOHELA engaged in an unfair or deceptive act or practice in violation of *§ 6.2-2610(A)(2)* by misrepresenting the amount, nature, or terms of any fee or payment due or claimed to be due on a qualified education loan and by misrepresenting the borrower's obligations under the loan.

92. By wrongfully denying Plaintiff Scheeren's PSLF Applications 1 and 2, MOHELA engaged in unfair acts or practices in violation of *§ 6.2-2610(A)(2).* MOHELA's act or practices created a substantial injury for Scheeren as she continues to be charged for federal student loans which should have been discharged. Scheeren could not avoid the injury because she cannot select any other student loan servicer to process her PSLF form and despite her years of efforts has been unable to get MOHELA to correct the error. Finally, the injury is not outweighed by countervailing benefits to consumers or competition.

93. By taking more than a year to process Scheeren's PSLF Applications 2 and 3, MOHELA engaged in an unfair or deceptive act or practice in violation of *§ 6.2-2610(A)(2).* During the excessive delays, MOHELA continued to misrepresent the amount, nature, and terms of any fee or payment due or claimed to be due and misrepresented the borrower's obligations under the loan.

94. By taking more than a year to process Scheeren's PSLF Applications 2 and 3, MOHELA engaged in unfair acts or practices in violation of *§ 6.2-2610(A)(2)*. These acts or practices resulted in a substantial injury to Scheeren because she was unable to make financial plans pending the discharge of a significant amount of student loans, spent hours trying to resolve the issue with MOHELA representatives, and was forced to make payments on loans that should have been discharged. Scheeren could not avoid the injury because she cannot select any other student loan servicer to process her PSLF form and despite her years of efforts has been unable to get MOHELA to process her final application. Finally, the injury is not outweighed by countervailing benefits to consumers or competition.

## FOURTH CAUSE OF ACTION
*Abusive Acts or Practices in Violation of the Code of Virginia § 6.2-2610(C)*

95. MOHELA is a qualified education loan servicer as defined by Code of Virginia *§ 6.2-2600.*

96. Plaintiff Scheeren is a qualified education loan borrower as defined by Code of Virginia *§ 6.2-2600.*

97. Scheeren's federal student loans are qualified education loans as defined by Code of Virginia *§ 6.2-2600.*

98. MOHELA took unreasonable advantage of Scheeren by wrongfully denying PSLF applications because those denials resulted in a prolonged period of repayment for Scheeren. MOHELA makes money from the Department of Education for each month a borrower is in repayment and by denying the PSLF applications, MOHELA secured additional payments under its contract with the Department of Education. In addition, MOHELA was paid by the Department of Education for each PSLF application it processed, regardless of whether it was approved or denied. By wrongfully denying applications and directing Scheeren to reapply,

MOHELA secured additional payments under its contract with the Department of Education. Finally, MOHELA also gained an unreasonable advantage on behalf of the loan holder in the form of additional payments.

99. Scheeren was unable to protect her own interests in a feature, term, or condition of these qualified education loans as she was unable to receive PSLF discharge from these wrongfully denied applications. Scheeren was unable to select her servicer or the servicer responsible for processing PSLF applications. In addition, Scheeren tried a significant range of actions including resubmission, reconsideration, and a variety of complaints in an attempt to protect her interests, none of which were successful. There is no other practical action she could have taken to ensure that MOHELA correctly processed her PSLF application.

100.    Scheeren reasonably relied on MOHELA to act in her interests in processing her PSLF forms timely and accurately. Scheeren further relied on MOHELA to provide accurate communications about the eligibility of FBA as a qualified employer and complying with the process for resolving disputes.

101.    Scheeren was unable to protect her own interests in connection with her use of the PSLF benefits provided under statutory and regulatory law. Specifically:

   a. Scheeren did not select MOHELA as her servicer and had no ability to choose, change, or remove MOHELA from that role. Scheeren had no contractual or practical mechanism to transfer her accounts to a different servicer in order have a faster or more accurate PSLF determination.

   b. Scheeren had no means of self-help. She could not compel MOHELA to comply with contractual or legal requirements in processing her PSLF applications. She

could not access, audit, or correct the underlying account records held by MOHELA.

c. When Scheeren attempted to assert her interests through the available channels — calling MOHELA, submitting complaints through the Department of Education's complaint portals, and submitting reconsideration requests — MOHELA either failed to respond or provided inaccurate information regarding the status of the application.

102. MOHELA took unreasonable advantage of Scheeren by taking more than a year to process her PSLF applications. MOHELA makes money from the Department of Education for each month a borrower is in repayment and by taking an excessive amount of time to process applications, MOHELA secured additional payments under its contract with the Department of Education. In addition, MOHELA was paid by the Department of Education for each PSLF application it processed. By delaying processing applications and directing Scheeren to reapply, MOHELA secured additional payments under its contract with the Department of Education. Finally, MOHELA also gained an unreasonable advantage on behalf of the loan holder in the form of additional payments that Scheeren made while waiting on the PSLF decisions.

103. Scheeren was unable to protect her own interests in a feature, term, or condition of these qualified education loans as she was unable to receive a timely determination of her PSLF applications. Scheeren was unable to select her servicer or the servicer responsible for processing PSLF applications. In addition, Scheeren tried a significant range of actions including resubmission, reconsideration, and a variety of complaints in an attempt to protect her interests, none of which were successful. There is no other practical action she could have taken to ensure that MOHELA timely processed her PSLF application.

## FIFTH CAUSE OF ACTION

*Failure to Timely Respond to written inquiry from a qualified education loan borrower § 6.2-2611(2)*

104.    MOHELA is a qualified education loan servicer as defined by Code of Virginia *§ 6.2-2600.*

105.    Plaintiff Scheeren is a qualified education loan borrower as defined by Code of Virginia *§ 6.2-2600.*

106.    Complaints submitted through the Department of Education's Feedback Center that were directed to MOHELA for response constitute a written inquiry under § 6.2-2611(2).

107.    All follow-up comments related to ongoing complaints that are directed to MOHELA are additional written inquiries under § 6.2-2611(2).

108.    PSLF Applications submitted to MOHELA are written inquiries under § 6.2-2611(2).

109.    MOHELA failed to respond within 10 business days to PSLF Application 1, PSLF Application 2, PSLF Application 3, Complaint 1, Complaint 2, and follow-up written inquiries to Complaint 2 in August, October, November, and December of 2024 and again in January of 2025.

110.    MOHELA failed to, within 30 business days, provide information relating to the request and, if applicable, to the action MOHELA would take to correct the account or an explanation that the account is correct in response to PSLF Application 1, PSLF Application 2, PSLF Application 3, Complaint 1, Complaint 2, and follow-up written inquiries to Complaint 2 in August, October, November, and December of 2024.

## PRAYER FOR RELIEF

Plaintiff Melissa Scheeren respectfully requests that this Court enter judgment in her favor and against Defendants and grant the following relief:

A.    Declare, the Department of Education's denials and constructive denials of Plaintiff's PSLF applications, reconsideration requests, and complaints identified in this Complaint were unlawful;

B.    Order the Department to find that the Fairfax Bar Association is a qualifying public service organization under 34 C.F.R. § 685.219 as in effect at the time Plaintiff submitted her applications, to credit Plaintiff with qualifying employment for her period of employment with the FBA, to deem Plaintiff to have satisfied the 120-payment requirement under 20 U.S.C. § 1087e(m), to discharge Plaintiff's eligible Federal Direct Loans accordingly, and to refund all payments made in excess of the required 120 payments;

    i.    Or, in the alternative, vacate the Department's denials and remand for further consideration consistent with this Court's opinion.

C.    Declare, pursuant to 28 U.S.C. §§ 2201-2202, the respective responsibilities of the Department and MOHELA with respect to each PSLF determination, communication, and processing action at issue in this Complaint;

D.    Declare that MOHELA's PSLF delays, PSLF denials, PSLF constructive denials, and failure to respond to written inquiries unlawful.

E.    Award Plaintiff actual damages and restitution against MOHELA pursuant to Va. Code Ann. § 6.2-2619(B), but in no case less than $500 per violation, including without limitation the amount of all payments made by Plaintiff on loans that should have been discharged, the value of time spent attempting to correct MOHELA's errors, and consequential financial harm;

F.     Award Plaintiff treble actual damages against MOHELA pursuant to Va. Code Ann. § 6.2-2619(C), but in no case less than $1,500 per violation, because MOHELA's conduct substantially interfered with Plaintiff's right to loan forgiveness, cancellation, or discharge under the Higher Education Act of 1965 and regulations promulgated thereunder;

G.     Award punitive damages against MOHELA pursuant to Va. Code Ann. § 6.2-2619(B)(4) in an amount sufficient to deter MOHELA and similarly situated servicers from engaging in comparable misconduct;

H.     Award Plaintiff her reasonable attorney's fees and costs pursuant to Va. Code Ann. § 6.2-2619(B)(5), 28 U.S.C. § 2412 (Equal Access to Justice Act), and all other applicable authorities;

I.     Award pre-judgment and post-judgment interest at the maximum rate permitted by law; and

J.     Grant such other and further relief as the Court deems just and proper,

Date: March 13, 2026                    Respectfully submitted,

*/s/ William Austin Hinkle*
William Austin Hinkle
Bar ID 90043756
Public Goods Practice LLP
1502 W 7th St.
STE 100
Erie, PA 16502
(215) 931-9240
austin@publicgoodspractice.com

Counsel for Plaintiff