**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

MELISSA SCHEEREN,

Plaintiff,

v.

DEPARTMENT OF EDUCATION, *et al.*,

Defendants.

Case No. 1:26-cv-01659-CRC

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

INTRODUCTION ..... 1
STANDARDS OF REVIEW ..... 3
I. Rule 56 ..... 3
II. Judicial Review Under APA ..... 4
BACKGROUND ..... 5
I. Statutory and Regulatory Framework ..... 5
a. PSLF determines eligibility based on employer conduct not employee job responsibilities ..... 5
b. Operative Rule When Plaintiff's PSLF Applications were Denied ..... 8
c. 2023 Amendments ..... 9
II. Factual Background ..... 9
a. Nature of FBA's Operations and Scheeren's Employment ..... 10
b. PSLF Applications and Denials ..... 11
c. Reconsideration Request 2 ..... 13
III. Procedural History ..... 14
ARGUMENT ..... 15
I. Defendants' Motion for Summary Judgment Fails to Meet its Burden ..... 15
II. Ms. Scheeren Has Standing and the Challenged Denials Are Final Agency Action ..... 17
III. The Department of Education's Denial of PSLF Application 2 and Reconsideration Request 2 was Not in Accordance with the Law ..... 20
a. PSLF Application 2 ..... 21
b. Reconsideration Request 2 ..... 22
IV. The Department of Education's Denial of PSLF Application 2 and Reconsideration Request 2 was Arbitrary and Capricious ..... 22
a. The Denial of PSLF Application 2 and Reconsideration Request 2 Runs Counter to the Record and Ignores the Evidence Before the Agency ..... 23
b. The Declaration's New Rationale Is an Irrelevant Post Hoc Construction — and Would Be Arbitrary and Capricious if It Had Been the Basis for Denial ..... 24
V. Failure to Process PSLF Application 3 for 45 Months is an Unreasonable Delay ..... 26
a. Factors One and Two: No Rule of Reason Governs This Delay ..... 27
b. Factor Four: An Empty Record Cannot Support a Competing-Priorities Defense ..... 29

c. Factors Three and Five: The Delay Withholds a Statutory Entitlement and Costs Plaintiff Payments Every Month it Continues ..... 30

d. Factor Six: The Record Does Not Rule Out Impropriety ..... 31

REMEDY ..... 31

I. Vacatur is Required ..... 31

II. The Court Should Resolve the Legal Question and Remand with Instructions ..... 32

CONCLUSION ..... 35

## TABLE OF AUTHORITIES

### CASES

*Afghan & Iraqi Allies Under Serious Threat Because of Their Faithful Serv. to the U.S. v. Blinken*, 103 F.4th 807 (D.C. Cir. 2024) ....29

*Ahmed v. Blinken*, 759 F. Supp. 3d 1 (D.D.C. 2024) ....27, 28

*Alfa Int'l Seafood v. Ross*, 264 F. Supp. 3d 23 (D.D.C. 2017) ....3

*Allied-Signal, Inc. v. U.S. Nuclear Regulatory Comm'n*, 988 F.2d 146 (D.C. Cir. 1993) ....32

*Am. Bar Ass'n v. U.S. Dep't of Educ.*, 370 F. Supp. 3d 1 (D.D.C. 2019) .... *passim*

*Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077 (D.C. Cir. 2001) ....3

*Am. Wildlands v. Kempthorne*, 530 F.3d 991 (D.C. Cir. 2008) ....16

*Arabzada v. Donis*, 725 F. Supp. 3d 1 (D.D.C. 2024) ....27

*Battle v. FAA*, 393 F.3d 1330 (D.C. Cir. 2005) ....20

*Bennett v. Spear*, 520 U.S. 154 (1997) ....18

*Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204 (1988) ....17

*Bowen v. Massachusetts*, 487 U.S. 879 (1988) ....34

*Burlington Ins. Co. v. Okie Dokie, Inc.*, 398 F. Supp. 2d 147 (D.D.C. 2005) ....3

*Butte County v. Hogen*, 613 F.3d 190 (D.C. Cir. 2010) ....22, 23

*Celtronix Telemetry, Inc. v. FCC*, 272 F.3d 585 (D.C. Cir. 2001) ....26

*City of Kansas City v. HUD*, 923 F.2d 188 (D.C. Cir. 1991) ....23, 25

*Da Costa v. Immigr. Inv. Program Off.*, 80 F.4th 330 (D.C. Cir. 2023) ....30

*Dickson v. Sec'y of Def.*, 68 F.3d 1396 (D.C. Cir. 1995) ....24

*Env't Def. Fund, Inc. v. Costle*, 657 F.2d 275 (D.C. Cir. 1981) ....23

*FCC v. Fox Television Stations, Inc.*, 556 U.S. 502 (2009) ....26

*FCC v. NextWave Pers. Commc'ns Inc.*, 537 U.S. 293 (2003) ....20

*Fla. Power & Light Co. v. Lorion*, 470 U.S. 729 (1985) ....32

*Friedman v. FAA*, 841 F.3d 537 (D.C. Cir. 2016) ....20

*Gomez v. Trump*, 485 F. Supp. 3d 145 (D.D.C. 2020) ....30

*Gulf Restoration Network v. Bernhardt*, 456 F. Supp. 3d 81 (D.D.C. 2020) ....3

*Haselwander v. McHugh*, 774 F.3d 990 (D.C. Cir. 2014) ....23, 34

*Hensley v. United States*, 292 F. Supp. 3d 399 (D.D.C. 2018) ....24

*In re Am. Rivers & Idaho Rivers United*, 372 F.3d 413 (D.C. Cir. 2004) ....28

*In re Barr Laboratories, Inc.*, 930 F.2d 72 (D.C. Cir. 1991) ....29

*In re Core Commc'ns, Inc.*, 531 F.3d 849 (D.C. Cir. 2008) ....27

*Liberty Fund, Inc. v. Chao*, 394 F. Supp. 2d 105 (D.D.C. 2005) ....................27

*Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024)....................20, 33

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992)....................18

*MCI Telecomms. Corp. v. FCC*, 627 F.2d 322 (D.C. Cir. 1980)....................28

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29 (1983)............4, 22, 23

*Muwekma Tribe v. Babbitt*, 133 F. Supp. 2d 30 (D.D.C. 2000)....................28, 30

*Nat'l Env't Dev. Ass'n's Clean Air Project v. EPA*, 752 F.3d 999 (D.C. Cir. 2014)................20, 21

*Nat'l Parks Conservation Ass'n v. Jewell*, 62 F. Supp. 3d 7 (D.D.C. 2014)....................32

*Neustar, Inc. v. FCC*, 857 F.3d 886 (D.C. Cir. 2017)....................22

*Norton v. S. Utah Wilderness All.*, 542 U.S. 55 (2004)....................20, 27, 33

*Oceana, Inc. v. Ross*, 363 F. Supp. 3d 67 (D.D.C. 2019)....................23

*Ramirez v. Blinken*, 594 F. Supp. 3d 76 (D.D.C. 2022)....................29

*Rutledge v. Del Toro*, No. 23-cv-1583 (CRC), 2024 WL 3225958 (D.D.C. June 28, 2024) ....4, 23, 24

*SEC v. Chenery Corp.*, 332 U.S. 194 (1947) .................... *passim*

*Telecomms. Rsch. & Action Ctr. v. FCC*, 750 F.2d 70 (D.C. Cir. 1984) ....................27, 28, 30, 31

*Tourus Records, Inc. v. DEA*, 259 F.3d 731 (D.C. Cir. 2001)....................22

*Tripoli Rocketry Ass'n v. ATF*, 437 F.3d 75 (D.C. Cir. 2006)....................23

*U.S. Army Corps of Eng'rs v. Hawkes Co.*, 578 U.S. 590 (2016)....................18

*United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954)....................21

*United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO-CLC v. Pension Ben. Guar. Corp.*, 839 F. Supp. 2d 232 (D.D.C. 2012) .............4

*Winston & Strawn, LLP v. McLean*, 843 F.3d 503 (D.C. Cir. 2016)....................15

**STATUTES**

5 U.S.C. § 551(13) ....................20

5 U.S.C. § 555(b) ....................27

5 U.S.C. § 555(e) ....................22

5 U.S.C. § 703....................33

5 U.S.C. § 704....................18

5 U.S.C. § 706(1) ....................4, 33

5 U.S.C. § 706(2) ....................16, 20, 22, 32

20 U.S.C. § 1087e(m) ....................5, 27, 30, 33

28 U.S.C. § 2201....................33

**REGULATIONS**

34 C.F.R. § 685.219 ........ *passim*

34 C.F.R. pts. 600, 668, 674, 682, 685........ 6

**RULES**

Fed. R. Civ. P. 56........ 3, 26

**OTHER AUTHORITIES**

73 Fed. Reg. 37,694 (July 1, 2008)........ 6

73 Fed. Reg. 63,232 (Oct. 23, 2008)........ 5

85 Fed. Reg. 49,798 (Aug. 14, 2020)........ 8

87 Fed. Reg. 41,878 (July 13, 2022)........ 7

87 Fed. Reg. 65,904 (Nov. 1, 2022)........ 6

## INTRODUCTION

Melissa Scheeren spent nearly a decade working as a librarian at the nonprofit Fairfax Bar Association's public law library. Beginning in September 2022, she submitted three applications for Public Service Loan Forgiveness. The Department of Education denied two of them and has never decided the third, which has now been pending for 45 months. Along the way, Ms. Scheeren has paid at least $16,140.71 on loans the law required the Department to forgive.

The Department's Motion for Summary Judgment cannot rescue those denials, because the Department's motion itself identifies two clear shortcomings in the Department's position and actually support granting Plaintiff's Motion for Summary Judgment.

First, the Department defends the denials under the wrong law, wrongly read. Its motion rests entirely on regulations that took effect July 1, 2023, after the applications and denials at issue. But even under that regulation, the Department misreads the requirements. The Department's reading would require that Plaintiff Scheeren show that the majority of *her own* job duties consisted of performing public service. But PSLF eligibility turns on the character of the *employer*, not the work of the individual *employee*. The Department's own exhibit says so: its letter responding to Senator Kaine's inquiry states that eligibility "is not about the work a borrower does but is based on who their employer is." ECF No. 16-5 at 8.

Moreover, under the regulation actually in force, a private nonprofit that provides public library services is a qualifying employer. The Department now concedes the Fairfax Bar Association is a nonprofit, and the uncontested record documents the Association's operation of the Fairfax Public Law Library. Those two facts are dispositive in this case – Scheeren was wrongfully denied PSLF discharge.

Second, the Department of Education provided no contemporaneous analysis or explanation of the decisions to deny the Plaintiff's PSLF applications and agreed that the plaintiff's exhibits plus a few additional documents constituted a "true and correct copy of the Administrative Record." ECF No. 15-1. On that record, the agency's entire explanation for five separate adverse actions is a handful of unexplained conclusions that shift from letter to letter and never once engage with the evidence before it. Specifically, the single justification provided in the record for denial of Scheeren's PSLF Application 2 and Reconsideration 2 are directly contradicted by the materials Scheeren submitted with those applications at the time.

Rather, Defendants attempt to rationalize the unlawful denials with a declaration that provides a post-hoc rationalization based on a flawed analysis of the regulatory text. This cannot satisfy the Defendants' burden.

Defendants' motion for Summary Judgment asks this Court to rule on all counts but only briefs the arbitrary and capricious standard as it relates to PSLF Application 1. The memorandum says nothing about the 45-month failure to decide Plaintiff's third application (Count II) or the allegation that the denials of PSLF Applications 1 and 2 were taken in a manner that was not in accordance with the law (Count I). Those claims stand undefended.

Plaintiff opposes Defendants' motion in its entirety and cross-moves for partial summary judgment on Count I, as to the denials of PSLF Application 2 and Reconsideration Request 2, and on Count II. Judgment on either count resolves this case as to the federal Defendants: vacatur of the PSLF Application 2 denial, with the declaration and instructed remand below, effects the discharge the statute commands, while an order compelling a decision on Application 3 ends the four-year default that Count II challenges. Because that relief affords Ms. Scheeren complete redress, the Court need not adjudicate the lawfulness of the remaining agency actions

(the denial of PSLF Application 1, Reconsideration Request 1, and the complaint dispositions) and Plaintiff does not abandon her challenges to them. As shown below, Defendants' motion fails as to every challenged action, because it defends none of the grounds the agency actually gave.

The certified record permits only one conclusion. Plaintiff respectfully asks the Court to deny the Department's motion, grant her cross-motion, vacate the unlawful denials, declare the Fairfax Bar Association a qualifying employer under the governing regulation, and order the Department to adjudicate her third application within 30 days consistent with that ruling.

## STANDARDS OF REVIEW

### I. Rule 56

Federal Rule of Civil Procedure 56(a) provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. The filing of cross-motions for summary judgment does not change the Rule 56 standard, nor does it collapse the two motions into a single inquiry. As courts in this District have recognized, "each individual summary judgment motion must be evaluated independently" and "cross-motions for summary judgment are no different than a solitary summary judgment motion." *Burlington Ins. Co. v. Okie Dokie, Inc.*, 398 F. Supp. 2d 147 (D.D.C. 2005). In an APA case, however, “the Rule 56 standard does not apply.” *Alfa Int’l Seafood v. Ross*, 264 F. Supp. 3d 23, 36 (D.D.C. 2017). The court instead “sits as an appellate tribunal,” and “[t]he entire case on review is a question of law.” *Id.* (quoting *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001)). Summary judgment thus serves as the mechanism for “deciding whether, as a matter of law, an agency action is supported by the administrative record and is otherwise consistent with the APA standard of review.” *Gulf Restoration Network v. Bernhardt*, 456 F. Supp. 3d 81, 93 (D.D.C.

2020); *see Rutledge v. Del Toro*, No. 23-cv-1583 (CRC), 2024 WL 3225958, at *6 (D.D.C. June 28, 2024) (Cooper, J.) (applying that standard to cross-motions).

## II. Judicial Review Under APA

When reviewing an agency action under the APA, the district court need only "review the purely legal question of whether the agency acted in an arbitrary and capricious manner." *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO-CLC v. Pension Ben. Guar. Corp.*, 839 F. Supp. 2d 232 (D.D.C. 2012). "Judicial review is limited to the administrative record." *Id.* Review is confined to the grounds the agency invoked when it acted: agency action "must be upheld, if at all, on the basis articulated by the agency itself," and post hoc rationalizations of counsel cannot sustain it. *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947); *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 50 (1983). In this action, as in most agency actions, there are no factual disputes for the court to resolve, as the government does not contest Ms. Scheeren's timeline of events, the finality of the agency's decisions, or the evidence before the agency at the time the decision was rendered. This action rests solely on the Agency's failure to interpret Ms. Scheeren's applications consistent with the law and its own regulations. As noted in the Agency's motion for summary judgment, all documents supplied with the complaint have been incorporated into the Agency record and are sufficient for the Court to review the agency's actions.

In this action, on the uncontroverted record before the court, it is clear the Department of Education's denials of Ms. Scheeren's PSLF Application 2 and Reconsideration 2 were not in accordance with the law and separately arbitrary and capricious, and that the Department's failure to decide PSLF Application 3 is an unreasonable delay that 5 U.S.C. § 706(1) directs the Court to compel.

## BACKGROUND

Federal law provides loan cancellation for public service workers who have worked for ten years in eligible public service jobs while making eligible payments on their loans. 20 U.S.C. § 1087e(m)(1). Congress designed the PSLF program to encourage talented and well-trained individuals to work in traditionally lower paying public service careers. Public interest legal services, public library services, and public education were core concerns of Congress as three of the statutorily required fields identified in the College Cost Reduction and Access Act of 2007 establishing the program.

### I. Statutory and Regulatory Framework

The PSLF statute states: that the Secretary of Education "shall cancel the balance of interest and principal due . . . on any eligible Federal Direct Loan" for a borrower who "has made 120" eligible "monthly payments on the eligible Federal Direct Loan after October 1, 2007" and "has been employed in a public service job during the period in which the borrower ma[de] each of the 120 payments." 20 U.S.C. § 1087e(m)(1).

#### a. PSLF determines eligibility based on employer conduct not employee job responsibilities

In implementing this statute, the Department of Education created a framework that allowed it to effectively administer the program while providing the benefits required under the statute. Since the first implementing regulation was finalized in 2008, the PSLF regulatory structure has required three things for eligibility for loan discharge. Borrowers are eligible if they (1) make "120 separate monthly payments after October 1, 2007, on eligible Direct loans," (2) under a qualifying repayment plan (3) while being employed full-time by a "public service organization." 73 Fed. Reg. 63,232, 63,242–43 (Oct. 23, 2008).

In implementing the regulation in this way, the Department derived the phrase public service organization "from the statutory definition of 'public service job' in section 455(m)(3)(B) of the HEA, and is intended to identify broad categories of eligible jobs rather than define specific jobs under those categories." 73 Fed. Reg. at 63,242-43. It explained in this very first implementing regulation that when evaluating which job is an eligible job under the statutory scheme, relevant inquiries are "the nature of the employer and the funding source of salaries." *Id.* at 63,243. It did not suggest the job responsibilities of individual employees were relevant inquiries.

The Department also recognized that making individual job duty determinations would be challenging to implement and consequently concluded that anyone who works at a "public service organization" regardless of their job duties would be eligible for PSLF. In fact, in the NPRM for the first PSLF rulemaking, the Department explained that the negotiated rulemaking committee made this decision because it would be, "clearer and more efficient to define the types of organizations that would qualify as eligible employers for purposes of public service loan forgiveness, and base eligibility for the forgiveness on the type of organization that employs the borrower." 2008 NPRM, 73 Fed. Reg. 37,694, 37,704 (July 1, 2008). Indeed, in the 2023 Final Rule the Department explained that "[f]rom the initial years of the PSLF program, the Department's regulations have established eligibility for PSLF based on whether the borrower works for a qualifying employer, not their specific job." *Institutional Eligibility Under the Higher Education Act of 1965, as Amended; Student Assistance General Provisions; Federal Perkins Loan Program; Federal Family Education Loan Program; and William D. Ford Federal Direct Loan Program*, 87 Fed. Reg. 65,904, 65,971 (Nov. 1, 2022) (codified at 34 C.F.R. pts.

600, 668, 674, 682, 685)(the "2023 Final Rule"). The relevant portion of this rule remained substantially unchanged between 2008 and 2022.

The Department's ability to assess individual job duties has not changed. In its NPRM for the 2022 rule, the Department explained that it could not implement any changes that require it to, "assess individual borrowers' job descriptions to determine whether some, but not all, positions within an employer qualify for PSLF." 87 Fed. Reg. 41,878, 41,933 (July 13, 2022). The 2023 Final Rule adopted that position even as it restructured the regulation around the term "qualifying employer" in place of "public service organization."

This understanding – that PSLF eligibility is based on the nature of the employer – has been consistent for nearly 20 years. The Department confirmed as much in this very case, explaining in response to a congressional inquiry made on Ms. Scheeren's behalf that "[e]mployment eligibility for the PSLF program is not about the work a borrower does but is based on who their employer is." Bowman Decl. Ex. C, ECF No. 16-5 at 8.[1]

And this District rejected the Department's practice of retrofitting heightened eligibility criteria onto PSLF borrowers after the fact. *Am. Bar Ass'n v. U.S. Dep't of Educ.*, 370 F. Supp. 3d 1, 25–34 (D.D.C. 2019) (Department's unacknowledged adoption of more demanding "public service organization" criteria, applied retroactively to borrowers, was arbitrary and capricious; individual denials vacated). The Department's motion repeats the error *ABA* condemned: it defends 2022 denials under a similar majority-of-duties gloss that appears in no version of the regulation at all. *Am. Bar Ass'n v. U.S. Dep't of Educ.* 370 F. Supp. 3d at 11-12.

---

[1] Not for nothing, but the employer-based interpretation of PSLF eligibility also supports principles of fundamental fairness that counsel the agency against providing PSLF eligibility to doctors and nurses working at a nonprofit hospital while denying the same relief to accountants, attorneys, administrative assistants, or facilities staff.

**b. Operative Rule When Plaintiff's PSLF Applications were Denied**

The complaint alleges that the Department of Education violated the APA in the actions it took in response to three PSLF applications. These applications occurred in September 2022 (PSLF Application 1), October 2022 (PSLF Application 2), and December 2022 (PSLF Application 3). Throughout that period, the operative rule relied on the same structure addressed above which determined whether an individual borrower was eligible for PSLF based on full-time employment at a "public service organization" which it defined in part as a private organization that:

A. provides the following public services: Emergency management, military service, public safety, law enforcement, public interest law services, early childhood education (including licensed or regulated child care, Head Start, and State funded pre-kindergarten), public service for individuals with disabilities and the elderly, public health (including nurses, nurse practitioners, nurses in a clinical setting, and full-time professionals engaged in health care practitioner occupations and health care support occupations, as such terms are defined by the Bureau of Labor Statistics), public education, public library services, school library or other school-based services; and

B. Is not a business organized for profit, a labor union, or a partisan political organization. 34 C.F.R. § 685.219(b) (2021); 85 Fed. Reg. 49,798 (Aug. 14, 2020).

In other words, payments made by a borrower under a qualifying repayment plan while employed full-time at a nonprofit organization which provides, "public library services," "public education services." or "public interest law services," (among other services), count toward the 120 necessary payments to earn PSLF discharge. A borrower's eligibility for the PSLF Program

is "not determined by her job responsibilities, but rather by whether her employer qualifies as a 'public service organization.'" *Am. Bar Ass'n, 370 F. Supp. 3d at 11–12.*

**c. 2023 Amendments**

In a 2022 rulemaking which became effective in 2023, the Department restructured the PSLF regulation in a way that based eligibility on whether an individual worked at a "qualified employer" rather than "public service organization." 2023 Final Rule. Prior to this rule, the phrase "qualified employer" was not in the PSLF regulations. The 2023 Final Rule is the rule relied upon by Defendants in their declaration and Motion for Summary Judgment.

The Department's analysis of this rule in this litigation is directly contradicted by the 2023 Final Rule itself. First, as mentioned above, it explicitly rejected any amendment to the rule that would require individualized determinations of job responsibilities. This directly contradicts the explanation provided by the Department in this case. Second, the rule itself explains how it does interpret the "majority" of work requirement by explaining that for a borrower to be eligible she must work for a non-governmental qualified employer where, "***the employer*** has devoted a majority of its full-time equivalent employees to working in…" one of the enumerated public services. 34 C.F.R. § 685.219(b)(15) (emphasis added). While irrelevant to the unlawfulness of the PSLF Application denial, Defendants' proffered explanation is plainly in conflict with the rule it cites.

**II. Factual Background**

Plaintiff Scheeren worked for the Fairfax Bar Association from March 2008 until February 2017. She was paid by the FBA throughout this time, the FBA issued her annual W-2 tax statements, and the FBA signed all three PSLF applications in this matter. FBA is a nonprofit 501(c)(6) organization, is not a labor union and is not a partisan political organization.

**a. Nature of FBA's Operations and Scheeren's Employment**

The FBA provides public library services. Access to the Public Law Library is free, open to the public, and it services more than 50,000 individuals each year – many of whom are not lawyers.[2]

The FBA provides public education services through the Law Center's law panels, neighborhood outreach program, family legal assistance project, and nonprofit legal support.

FBA provides public interest legal services directly and through the Law Center and the Public Law Library. FBA operates the Law Center which provides a range of legal services including Wills on Wheels, an Uncontested Divorce Program, and the Family Legal Assistance Project among others. It also provides public interest legal services through the Conciliation Program to, "help resolve motions and other preliminary disputes without charge," for all civil discovery disputes, visitation and emergency visitation orders, modifications to scheduling orders, and in other matters at the discretion of the court. The website explains that the program is, "provided **solely as a public service** by the Fairfax Bar Association…" *Conciliation Program*, Fairfax Law Found., https://www.fairfaxlawfoundation.org/page/4 (last visited May 13, 2026) (emphasis added).

Funding for the Law Center comes from, in part, the Fairfax County Consolidated Community Funding Pool, a grant funding program run by Fairfax County. The Fairfax Public Law Library is supported in-kind by the County government insofar as the Fairfax County Circuit Court building has been the host of the library for more than 50 years and the library's fixtures are owned by the County. The library also receives direct funding from both Fairfax

[2] Clifton Barnes, *In Defense of Print: Law Libraries Not Obsolete, Bar Leaders Say*, Bar Leader, Sept.–Oct. 2007, https://www.americanbar.org/groups/bar-leadership/resources/bar-leader-magazine/2007-2008/3201/ (last visited May 13, 2026).

County and from civil filing fees from the County Court. Fairfax County supported the FBA in other ways too. While working for the Fairfax Public Law Library, Fairfax County provided Scheeren's email address using its own domain.

**b. PSLF Applications and Denials**

Plaintiff Scheeren submitted three applications for PSLF discharge. Two of those applications were denied and one is still pending 45 months later. Of the two denied applications the record reflects three contemporaneous rationales and one post-hoc justification based on the Department's interpretation of 2023 PSLF Amendments provided for this litigation but contradicted by records in this case.

Ms. Scheeren consolidated her federal student loans into Direct Consolidation Loans disbursed on November 4, 2021. ECF No. 16-5 at 11; Scheeren Decl. ¶ 9. By then she had already made her 120th monthly payment on the loans — on or around June 2019 — and 108 of her monthly payments were made during months in which she was employed full-time by the FBA. Scheeren Decl. ¶ 10. The Department's own records credit her with 210 eligible payments (well over the statutory 120) but only 81 qualifying payments, because the Department refuses to count the FBA years. ECF No. 16-5 at 11. The qualifying-employer determination for the FBA is therefore the only thing standing between Ms. Scheeren and discharge.

Scheeren submitted her first PSLF application (PSLF Application 1) on September 2, 2022, and indicated on the form that she believed she was immediately eligible for loan discharge. ECF No. 1-1 at 2-13 (Ex. 2). Scheeren attached FBA's bylaws to the application. Ms. Scheeren in fact submitted two forms that day: an initial submission she realized was unsigned and incomplete, and a corrected, complete application submitted the same day. Scheeren Decl. ¶¶ 6–7. The bylaws establish all required elements to demonstrate that FBA was a "qualified

employer" under the regulation. Specifically, the bylaws explain the purpose of the organization which includes, "to operate a public law library;" "to enhance and foster the public's understanding of the practice of the law and the judicial system by providing public outreach and educational programs;" and "to facilitate the administration of justice." ECF No. 1-1 at 2 (Ex. 2). The nonprofit status of the FBA is established by the bylaws' prohibition on any distribution of earnings, ECF No. 1-1 at 13 (Bylaws art. XIII), and confirmed by the Department's own concession that the FBA is a 501(c)(6) organization. ECF No. 16-1 at 8.

The record shows that this application was denied for two reasons. First, because the submitted form did not include responses to questions nine through twelve; second, because FBA was a "for-profit organization." In its Motion for Summary Judgment the federal defendants do not defend any of the stated rationale for these denials.

***i. PSLF Application 2***

On October 24, 2022, Ms. Scheeren submitted her second PSLF application (PSLF Application 2) which included the same bylaws she included in PSLF Application 1 and additional public information available on FBA's website and details on the public services that FBA performed. ECF No. 1-1 at 33-57 (Ex. 3). After more than a year of processing, PSLF Application 2 was denied because the organization is a, "not-for profit organizations that do not provide a public service." *Id.* at 105 (Ex. 12). In fact, the record reflects that the Department was in possession of evidence that the FBA provided public library services, public education, and public legal services, as defined by the regulations. The record does not show any analysis or consideration of the materials provided in PSLF Application 2 that demonstrate these facts. The Defendants' declarant agreed that the FBA is a nonprofit organization and that it provided public library services. The government's only dispute related to PSLF Application 2 is whether the evidence provides enough information to conclude that the majority of Ms. Scheeren's time was

working in public library services – a showing that is irrelevant to the regulation and analysis that is not in the certified record. ECF No. 16-2 ¶ 8.

#### *ii. PSLF Application 3*

Scheeren submitted PSLF Application 3 in December 2022 seven weeks after PSLF Application 2 after the Department provided no response. ECF No. 1-1 at 61 (Ex. 5). PSLF Application 3 included the same materials provided in PSLF Application 2 and added a letter from the Executive Director of the FBA explaining that the Fairfax Public Law Library is a, "*public library* that makes legal information available to the public free of charge." *Id.* at 83. Scheeren never received a response to this application, and it remains open on the Department's website. ECF No. 1-1 at 91 (Ex.t 6).

### c. Reconsideration Request 2

Two weeks after the Department denied PSLF Application 2, Ms. Scheeren filed Reconsideration Request 2 asking the Department to reverse its determination about the eligibility of the FBA. ECF No. 1-1 at 107-132 (Ex. 13) & 134 (Ex. 14). In the reconsideration request, Scheeren explains the operative regulatory scheme and information showing that the Department's determination was clearly erroneous. *Id.* To support the reconsideration, Ms. Scheeren attached FBA Certificate of Incorporation and FBA Articles of Incorporation certified by the Clerk of the Commission; the letter signed by the Executive Director of the FBA explaining that one of its primary purposes is to maintain and operate a law library; and the FBA bylaws. *Id.*

On March 27, 2024 the Department of Education denied Reconsideration 2, again noting that "this reconsideration review is closed," and explaining that FBA, "is not a qualifying employer for PSLF and TEPSLF because it is a not-for-profit organization that does not provide qualifying public service." *Id.* at 135.

## III. Procedural History

Ms. Scheeren filed this action on May 13, 2026, attaching the complete documentary history of her PSLF applications, reconsideration requests, and complaints, together with the Department's responses as Exhibits 1 through 20. ECF No. 1-1. The Department did not answer. On August 19, 2026, it moved for summary judgment, ECF No. 16, and filed a certification of the administrative record executed by its Deputy General Counsel, ECF No. 15-1. The certification states that "the Exhibits attached to the Complaint (ECF No. 1-1 at 1-161) along with the Exhibits attached to the Declaration of Nikki Harris filed with the Department's motion for summary judgment collectively constitute a true and correct copy of the Administrative Record," and that those materials "were directly or indirectly considered in connection with the Department's decision to deny the Plaintiff's eligibility." ECF No. 15-1 at 1.

Consequently, the review of Counts I and II is confined to that certified record, and the Department is bound by its contents: every ground it provided, and every absence of reasoning, is now fixed. *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947). The Department defined the record's scope itself — certifying not only the complaint exhibits but also the exhibits it selected to accompany the Bowman Declaration — and the record it chose contains no analysis of the FBA's eligibility at all. There is no memorandum, no eligibility worksheet, no internal correspondence applying 34 C.F.R. § 685.219 to the Fairfax Bar Association anywhere in the certified record; there are only the denial letters, whose stated grounds are addressed below.

Notably, the certification extends to the Bowman Declaration's *exhibits* but not to the Declaration itself. ECF No. 15-1 at 1. By the Department's own instrument, the rationale its declarant now offers for the denials, Bowman Decl. ¶¶ 6–8, is not part of the administrative record, which is to say, it is not a basis on which the denials can be sustained. *Chenery*, 332 U.S. at 196.

Counts III through V assert claims against loan servicer MOHELA under Virginia's qualified education loan servicer statute, Va. Code §§ 6.2-2600 *et seq.*, for which Ms. Scheeren has demanded a jury. Those claims proceed on an ordinary civil track: MOHELA answered on July 20, 2026, ECF No. 14, and the parties conferred under Rule 26(f) and Local Civil Rule 16.3 on September 2, 2026, with a joint scheduling report forthcoming. The federal Defendants did not participate in that conference. The present cross-motions concern only Counts I and II against the federal Defendants; nothing in them resolves, or depends upon, the claims against MOHELA.

## ARGUMENT

There are two independent grounds for vacating the Department's denial of Plaintiff's PSLF Application 2 and Reconsideration Request 2, and they carry different standards of review. In addition, Count II provides a basis for the Court to compel agency action related to PSLF Application 3.

### I. Defendants' Motion for Summary Judgment Fails to Meet its Burden

Defendants' motion boils down to a single argument – that, "Plaintiff was required to prove that most of her employment with the FBA was in one of the enumerated fields listed in 34 C.F.R. § 685.219(b)(15) to establish her PSLF eligibility." ECF No. 16-1 at 8. The provision Defendants quote is the 2023 regulation — published November 1, 2022, and effective July 1, 2023. 2023 Final Rule, 87 Fed. Reg. at 65,904. As explained above, the motion briefs only the arbitrary-and-capricious standard and addresses only PSLF Application 1. It fails as a matter of law for three independent reasons.

First, because a court may not grant summary judgment unless the movant has carried its burden as to each claim on which judgment is sought, *Winston & Strawn, LLP v. McLean*, 843 F.3d 503, 505 (D.C. Cir. 2016), the best outcome the Defendants could achieve would be a ruling

that the denial of PSLF Application 1 was not arbitrary and capricious. The motion provides no argument that same denial does not violate the APA's prohibition on action taken not "in accordance with the law." 5 U.S.C. § 706(2)(A). More critically it says nothing about denials of PSLF Application 2; Reconsideration Request 2; or the entirety of Count II's allegation that failing to process PSLF Application 3 is an unreasonable delay. Judgment for Defendants cannot be entered on claims and theories a movant never briefed. *Am. Wildlands v. Kempthorne*, 530 F.3d 991, 1001 (D.C. Cir. 2008) (arguments raised for the first time in reply are forfeited).

Second, even if the Court interprets the government's position charitably and applies the same reasoning to the other agency actions implicated by Count I, there is simply no attempt by the government to defend how those decisions were made at the time. The record shows that Government denied PSLF Application 1 on two grounds:

- First, because, "your employer is a for-profit organization, which does not qualify for PSLF or TEPSLF." ECF No. 1-1 at 30.
- Second it was allegedly incomplete: "You or your employer did not answer questions 9-12 in Section 3 confirming your organization type." ECF No. 1-1 at 29.

It denied both PSLF Application 2 and Reconsideration Request 2 because in its view, the FBA did not provide a public service. ECF No. 1-1 at 105 (Denying PSLF Application 2 because FBA is a "Not-for-Profit Organizations that do not provide a public service.") & ECF No. 1-1 at 135 (denying Reconsideration Request 2 because FBA is, "not a qualifying employer for PSLF and TEPSLF because it is a not-for-profit organization that does not provide a qualifying public service.")

To succeed in its motion for summary judgment, the government would have to show that those decisions as they were made at that time did not violate the APA as a matter of law. Their

motion does not mention them and there is no room in the certified record to mount a credible defense.

The record before the agency forecloses both grounds. Application 1 attached the FBA's bylaws, which recite its incorporation as a nonstock, not-for-profit corporation and expressly prohibit any distribution of earnings, ECF No. 1-1 at 13 (Bylaws art. XIII) — a position Defendants have abandoned, describing the FBA in their own papers as "classified as a 501(C)(6) entity," ECF No. 16-1 at 8, and reproducing the bylaws and tax filings as their own exhibits, ECF No. 16-4. And the incompleteness ground refutes itself: the same letter that faulted the application because questions 9 through 12 "confirming your organization type" went unanswered announced that the agency had "determined that your employer is a for-profit organization." ECF No. 1-1 at 29–30. Organization type is precisely what questions 9 through 12 ask. The incompatibility of the certified record with each stated ground is demonstrated in Parts III and IV, *infra*.

Third, the one argument the motion does advance is legally unavailable. The majority-of-employment standard appears in no denial letter, no reconsideration decision, and nowhere in the certified record; it enters this case through a declaration prepared for litigation, construing a regulation that took effect on July 1, 2023 — after every application and reconsideration request at issue. It is therefore barred twice: as a post hoc rationalization the Court may not consider, *Chenery*, 332 U.S. at 196, and as a retroactive application of a rule to conduct predating it, *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988).

## II. Ms. Scheeren Has Standing and the Challenged Denials Are Final Agency Action

As the party invoking federal jurisdiction, Ms. Scheeren bears the burden of establishing standing and, at summary judgment, must support it with evidence. *Lujan v. Defenders of*

*Wildlife*, 504 U.S. 555, 560–61 (1992). She has done so. The Department's denials and its failure to decide her third application have deprived her of a statutory loan discharge; she has paid at least $16,140.71 on loans that should have been cancelled, approximately $40,000 of which remains as an open debt on her credit profile, and monthly payments of more than $700 will resume when the current forbearance ends. Scheeren Decl. ¶¶ 11-12. Those injuries are concrete, traceable to the Department's actions, and fully redressable by the relief requested. The Court may properly consider Ms. Scheeren's declaration for this purpose, as for the prejudice worked by the delay challenged in Count II, because neither question goes to the merits of the record the agency compiled. No statement of material facts accompanies the cross-motion: review of Counts I and II proceeds on the certified administrative record, LCvR 7(h)(2), and the accompanying declaration supplies only standing, delay-prejudice, and remedy facts — none of which Defendants' motion disputes.

The APA permits review of "final agency action." 5 U.S.C. § 704. An action is final if it satisfies two conditions: it "mark[s] the consummation of the agency's decisionmaking process" rather than being "of a merely tentative or interlocutory nature," and it is an action "by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997). The inquiry is "pragmatic." *U.S. Army Corps of Eng'rs v. Hawkes Co.*, 578 U.S. 590, 599 (2016). Although Defendants do not dispute finality, Ms. Scheeren carries the burden, and each challenged action satisfies both *Bennett* conditions.

The denial of PSLF Application 2 is final on its face. It announced a completed determination. The notification explained that the Department, "completed our review" and "determined" FBA is "not eligible." ECF No. 1-1 at 105 (Ex. 12). And that determination carried immediate legal consequences: Ms. Scheeren's years of FBA employment were excluded from

PSLF credit, her qualifying payment count was fixed below the statutory threshold, and her repayment obligations continued. This Court has already held that PSLF denial letters of precisely this kind are final agency action, because they determine borrowers' rights to have employment and payments counted toward the 120 payments required for forgiveness. *Am. Bar Ass'n v. U.S. Dep't of Educ.*, 370 F. Supp. 3d 1, 24–26 (D.D.C. 2019). Nothing about this letter was tentative.

The denial of Reconsideration Request 2 is final for the same reasons. The Department maintains a reconsideration process and invites borrowers to use it; Ms. Scheeren invoked it on November 13, 2023, resubmitting her application with the FBA's certified corporate documents and a letter from its Executive Director. ECF No. 1-1 at 107–134 (Exs. 13 & 14). The Department's March 27, 2024 response announced that it had "completed our review of your reconsideration request," that "this reconsideration review is closed," and that the FBA "is not a qualifying employer for PSLF and TEPSLF because it is a not-for-profit organization that does not provide qualifying public service." ECF No. 1-1 at 135. The letter offered no further process and fixed Ms. Scheeren's inability to count her FBA employment toward discharge; as the operative statement of the agency's reasoning, it is the natural object of review. Nor does the pendency of PSLF Application 3 unsettle this finality: Application 3 was submitted in December 2022, ten months before the Application 2 denial issued, and cannot be a request to reconsider a decision that did not yet exist — and the reconsideration process the Department does offer was invoked and expressly closed.

Finally, as to PSLF Application 3 which remains undecided and open on the Department's own portal, Scheeren Decl. ¶ 15 (still open as of September 9, 2026) – no finality showing is required: § 706(1) authorizes the Court to "compel agency action unlawfully withheld or

unreasonably delayed," and "agency action" includes the "failure to act." 5 U.S.C. §§ 551(13), 706(1); *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 62-64 (2004). In the alternative, should the Court view the Department's four-year silence as a decision not to decide, that too is final and reviewable: an agency that "refuses to deny" a submission while making clear it will not determine it "has engaged in final agency action." *Friedman v. FAA*, 841 F.3d 537, 542 (D.C. Cir. 2016).

## III. The Department of Education's Denial of PSLF Application 2 and Reconsideration Request 2 was Not in Accordance with the Law

Agency action is taken "not in accordance with the law" when it conflicts with any governing legal norm like a statute, regulation or the agency's own binding rules. 5 U.S.C. § 706(2)(A); *FCC v. NextWave Pers. Commc'ns Inc.*, 537 U.S. 293, 300 (2003). An agency is bound by its own regulations and "may not violate" them "to the prejudice of others," *Battle v. FAA*, 393 F.3d 1330, 1336 (D.C. Cir. 2005); *Nat'l Env't Dev. Ass'n's Clean Air Project v. EPA*, 752 F.3d 999, 1011 (D.C. Cir. 2014).

Whether the Department's denials comport with the PSLF regulations in effect at the time of application review is a question of law on which this court exercises independent judgment. *Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024).

Those principles decide this case, because the Department certified the administrative record as complete, ECF No. 15-1, and that record reflects only a single reason the agency gave for denying Ms. Scheeren's PSLF Application 2 and subsequent Reconsideration Request 2, which is flatly contradicted by that record.

**a. PSLF Application 2**

The Department ultimately denied PSLF Application 2 based on a single conclusory sentence: the FBA "is a not-for-profit organization that does not provide a qualifying public service." ECF No. 1-1 at 105 (Ex. 12, October 27, 2023 denial).

This is the entire record evidence documenting the Department's decision-making related to PSLF Application 2 and it is a bare conclusion that engages with none of the record evidence and none of the regulatory categories. PSLF Application 2 included the completed form along with FBA bylaws and public information about the organization. The bylaws before the agency state that the FBA exists "[t]o operate a public law library," to maintain that library "for the benefit of . . . the general public," and to provide public outreach and educational programs. ECF No. 1-1 at 45 (Bylaws art. II). "Public library services," "public education," and "public interest law services" are enumerated qualifying services under the regulation the agency was bound to apply. 34 C.F.R. § 685.219(b).

A determination that fails to apply the agency's own regulatory definitions to the undisputed record is contrary to law, *United States ex rel. Accardi v. Shaughnessy, 347 U.S. 260 (1954)*; *Nat'l Env't Dev. Ass'n*, 752 F.3d at 1009, and its refusal to engage the evidence independently renders it arbitrary and capricious, as shown in Part IV, *infra*. The Department concedes as much today. Not only does the government abandon the rationale it provided at the time, but it now concedes the two dispositive eligibility questions – that the FBA is an eligible nonprofit organization and that it provided an enumerated public service. The Bowman Declaration explains that operating a "public law library," "meets the criteria of 685.219(b)(15)." Bowman Decl. ¶ 6.

Under *Chenery*, this single ground for denying PSLF eligibility based on PSLF Application 2 – that FBA does not provide a public service – is the only basis on which the

denials can be sustained. It is refuted by the record the Department itself certified. The denials must be set aside. 5 U.S.C. § 706(2)(A).

#### b. Reconsideration Request 2

When submitting Reconsideration Request 2, Ms. Scheeren included the entire PSLF Application 2 along with additional information for the Department's consideration. This included a letter from the executive director and articles of incorporation confirming that the FBA operates a public law library, among other activities which would independently make it a qualifying employer under the regulation.

Despite the additional documentation the Department denied Reconsideration Request 2 on the same grounds without providing any additional analysis. As explained above, this failed to apply the agency's own regulatory definition to the record before the agency and is contrary to law.

### IV. The Department of Education's Denial of PSLF Application 2 and Reconsideration Request 2 was Arbitrary and Capricious

Agency action is arbitrary and capricious where the agency "relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). These standards govern informal adjudications no less than rulemakings. *Neustar, Inc. v. FCC*, 857 F.3d 886, 893 (D.C. Cir. 2017). In an informal adjudication, the agency's statement of grounds "must be one of 'reasoning'; it must not be just a 'conclusion.'" *Butte County v. Hogen*, 613 F.3d 190, 194 (D.C. Cir. 2010); see 5 U.S.C. § 555(e); *Tourus Records, Inc. v. DEA*, 259 F.3d 731, 737 (D.C. Cir. 2001).

The standard is "a highly deferential one, which presumes the agency's action[s] to be valid." *Oceana, Inc. v. Ross*, 363 F. Supp. 3d 67, 76 (D.D.C. 2019) (Cooper, J.) (quoting *Env't Def. Fund, Inc. v. Costle*, 657 F.2d 275, 283 (D.C. Cir. 1981)). But deference presupposes something to defer to: where the agency's explanation "lacks any coherence," the court "owe[s] no deference to the [agency's] purported expertise because [it] cannot discern it." *Haselwander v. McHugh*, 774 F.3d 990, 1000 (D.C. Cir. 2014) (quoting *Tripoli Rocketry Ass'n v. ATF*, 437 F.3d 75, 77 (D.C. Cir. 2006)). As this Court has put it, a reviewing court "cannot defer into a void": even under a highly deferential standard, the agency "must adequately explain its reasoning and address each nonfrivolous argument" presented to it. *Rutledge v. Del Toro*, No. 23-cv-1583 (CRC), 2024 WL 3225958, at *7 (D.D.C. June 28, 2024) (Cooper, J.)

**a. The Denial of PSLF Application 2 and Reconsideration Request 2 Runs Counter to the Record and Ignores the Evidence Before the Agency**

As shown above, the grounds the Department stated for denial of PSLF Application 2 is contradicted on the face of the record the Department certified, and the record contains no evidence impeaching any of the materials Ms. Scheeren submitted. A stated rationale contradicted by the agency's own record is the definition of an explanation that "runs counter to the evidence before the agency." *State Farm*, 463 U.S. at 43; see *City of Kansas City v. HUD*, 923 F.2d 188, 194 (D.C. Cir. 1991) (agency action "based on a factual premise that is flatly contradicted by the agency's own record" is not reasoned decisionmaking). And an agency's refusal to consider evidence bearing on the issue before it is independently "arbitrary agency action." *Butte County*, 613 F.3d at 194.

Ms. Scheeren submitted PSLF Application 2 the same day the Application 1 denial issued, attaching the very documentation that denial letter requested — the bylaws and public materials showing the FBA's nonprofit status and the services it provides. The agency said

nothing for thirteen months, then denied. The eventual merits rationale — that the FBA "does not provide a qualifying public service" — is a single sentence that applies no regulatory criterion to any fact in the record. When an agency "merely parrots the language" of its governing standard "without providing an account of how it reached its results, it has not adequately explained the basis for its decision." *Dickson v. Sec'y of Def.*, 68 F.3d 1396, 1405 (D.C. Cir. 1995); see *Am. Bar Ass'n v. U.S. Dep't of Educ.*, 370 F. Supp. 3d 1, 32–33 (D.D.C. 2019) (PSLF denial letters applying unexplained standards failed "the minimum requirements for reasoned decisionmaking"). This Court has said the same of a "bald statement" couched in "'boilerplate' language that merely parrot[s] the relevant legal standard." *Rutledge*, 2024 WL 3225958, at *8 (quoting *Hensley v. United States*, 292 F. Supp. 3d 399, 410 (D.D.C. 2018)).

The denial of Reconsideration Request 2 fails for the same reason as it does not substantively engage with the record. That failure is more pronounced still because the record on reconsideration was even more expansive than the PSLF Application 2 record.

And as shown in Part III, *supra*, the Department's own filings now concede the facts its denial purported to find absent: the FBA's nonprofit status and its operation of a public law library. Bowman Decl. ¶ 6; ECF No. 16-1 at 8.

**b. The Declaration's New Rationale Is an Irrelevant Post Hoc Construction — and Would Be Arbitrary and Capricious if It Had Been the Basis for Denial**

In response to this litigation, the Department has produced, through the Bowman Declaration, a new analysis of Ms. Scheeren's eligibility. An analysis that interprets the current PSLF regulation rather than the regulation in effect at the time of PSLF Application 2, and that appears nowhere in the certified record as a basis for any denial. The declarant asserts that Ms. Scheeren was required to "prove that a majority of her employment was pursuant to operating a public law library or any other enumerated field listed in 34 C.F.R. § 685.219(b)(15)," Bowman

Decl. ¶ 6, and that "[a]s a result of the Plaintiff's failure to prove that a majority of her employment was pursuant to the enumerated fields . . . [t]he Defendant notified the Plaintiff that her employment with the Fairfax Bar Association was not eligible for PSLF," *id*. ¶ 8. The Declaration is not a record of the agency's decision making; it is litigation advocacy in declaration form, and it fails on four independent grounds.

*First*, the account is contradicted by the record. No decision document communicated to Ms. Scheeren — not the October 24, 2022, letter, not the October 27, 2023, denial, not the March 2024 reconsideration denial — states or implies that she was denied for failing to prove the majority character of her individual employment. The contemporaneous letters state different grounds entirely (or in the case of the Department's letter to Senator Kaine flatly contradict the grounds supplied in litigation), and the declarant cites nothing in the administrative record for her account of what the agency "notified" Ms. Scheeren. Where the rationale advanced in litigation differs from the rationale in the agency's decision letters, that inconsistency precludes affirmance. *City of Kansas City*, 923 F.2d at 192-94; *Chenery*, 332 U.S. at 196.

*Second*, the declarant's test misreads even the regulation she invokes. The current rule ties eligibility to employment with a "qualifying employer," and its majority requirement operates at the level of the employer, which must have "devoted a majority of its full-time equivalent employees to working in at least one of the" enumerated public service areas. 34 C.F.R. § 685.219(b)(15). Nothing in the regulation conditions eligibility on the composition of an individual borrower's duties, and the Department's own rulemaking rejected precisely that approach. The declarant's employee-level majority test is a standard of her own construction, appearing in no regulation the Department has ever promulgated.

*Third*, even if the current regulation could bear the declarant's reading, it took effect on July 1, 2023, and is not the regulation under which Ms. Scheeren's September and October 2022 applications were governed and decided. Applying a later-adopted standard to alter the legal consequences of completed applications is impermissibly retroactive. *Am. Bar Ass'n*, 370 F. Supp. 3d at 35 (a rule is retroactive if it "alter[s] the past legal consequences of past actions") (quoting *Celtronix Telemetry, Inc. v. FCC*, 272 F.3d 585, 588 (D.C. Cir. 2001)); and adopting a new eligibility standard without acknowledging the change fails reasoned decision making in any event. *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009) (an agency may not "depart from a prior policy sub silentio").

*Finally*, the Court should disregard paragraph 10 of the Bowman Declaration. It recounts compromise discussions between counsels after this litigation began, offered to suggest Ms. Scheeren has been unreasonable — a use Federal Rule of Evidence 408 forbids. The declarant identifies no personal knowledge of those communications, Fed. R. Civ. P. 56(c)(4), and post-decisional events are in any case irrelevant to record review of the denials. *Chenery*, 332 U.S. at 196. Should the Court nonetheless consider it, paragraph 10 concedes the dispositive point: the Department demanded evidence of Ms. Scheeren's "job responsibilities and duties" — a criterion appearing nowhere in 34 C.F.R. § 685.219, in any of its versions, and which was explicitly rejected when the PSLF program was implemented.

### V. Failure to Process PSLF Application 3 for 45 Months is an Unreasonable Delay

If the Court grants summary judgment on Count I, vacates the denial of PSLF Application 2, and orders relief on the record, it may have no need to reach Count II. But Count II stands on its own: the Department's motion says nothing about it, and a finding of unreasonable delay (with an order compelling a decision on Application 3 within 30 days, consistent with the Court's ruling

that the FBA was a qualifying employer during Ms. Scheeren's employment) independently resolves this case as to the federal Defendants. As shown in Part I, *supra*, the Department moved for judgment on all counts but briefed none of this; it has not carried its burden as movant on Count II.

A § 706(1) claim lies where the agency has failed to take "a discrete agency action that it is required to take." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004). Both elements are satisfied on this record. Deciding a pending application is a discrete act, *id.*; *Ahmed v. Blinken*, 759 F. Supp. 3d 1, 10 (D.D.C. 2024) (issuing a final decision on a pending application "is plainly a discrete agency action"), and it is legally required twice over: the APA commands that "[w]ithin a reasonable time, each agency shall proceed to conclude a matter presented to it," 5 U.S.C. § 555(b), and the PSLF statute commands that the Secretary "shall cancel" the qualifying balance — a nondiscretionary duty that presupposes a decision. 20 U.S.C. § 1087e(m)(1). Whether the Department's failure to decide is "unreasonabl[e]" is governed by the six-factor test of *Telecommunications Research & Action Center v. FCC* ("TRAC"), 750 F.2d 70, 79–80 (D.C. Cir. 1984).

**a. Factors One and Two: No Rule of Reason Governs This Delay**

Factor one, whether the agency's response time "is governed by a rule of reason," is the "most important" factor. *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008). It is the agency that must supply the rationale: "the agency must, at a minimum, provide a justification for the delay." *Liberty Fund, Inc. v. Chao*, 394 F. Supp. 2d 105, 120 (D.D.C. 2005). The inquiry asks whether there is "any rhyme or reason" for the agency's timing — whether it "complies with an existing specified schedule" and "is governed by an identifiable rationale." *Arabzada v. Donis*, 725 F. Supp. 3d 1, 14 (D.D.C. 2024). And "regardless of the amount of time that a

plaintiff has waited, 'a delay in adjudication caused by the agency's failure to follow any rule of reason is, almost tautologically, unreasonable.'" *Ahmed v. Blinken*, 759 F. Supp. 3d at 12.

Here the Department has supplied nothing. The certified record contains no queue, no processing schedule, no workload evidence, and no explanation of any kind for why Application 3, pending since December 2022, remains undecided. The Department's summary-judgment papers do not mention it and the certified record confirms there is no additional communication related to this application. An agency's "ambiguous, indefinite time frame" for acting "defeats any assertion that the process proceeds with reasonable dispatch." *Muwekma Tribe v. Babbitt*, 133 F. Supp. 2d 30, 37 (D.D.C. 2000). On a record this empty, factor one weighs decisively for Ms. Scheeren.

Nor is there any yardstick against which this delay could survive. Congress supplied no numeric deadline, but factor two asks for any "indication of the speed with which [Congress] expects the agency to proceed," TRAC, 750 F.2d at 80, and three sources supply that content. First, the APA itself: § 555(b)'s reasonable-time command is Congress's instruction, and the D.C. Circuit's gloss is that a reasonable time for agency action "encompass[es] 'months, occasionally a year or two, but not several years or a decade.'" *In re Am. Rivers & Idaho Rivers United*, 372 F.3d 413, 419 (D.C. Cir. 2004) (quoting *MCI Telecomms. Corp. v. FCC*, 627 F.2d 322, 340 (D.C. Cir. 1980)). Forty-five months is "several years." Second, the Department's own conduct in this very case supplies the ruler: it decided Application 1 in 52 days and reached the merits of Application 2 — however unlawfully — in 13 months. Application 3, materially identical to Application 2 plus a supporting letter from the FBA's Executive Director, has now waited roughly twenty-five times longer than Application 1 and more than three times longer than Application 2. An agency's demonstrated capacity to decide identical applications from the same

borrower is the most concrete rule of reason available. Third, the Department built PSLF around an annual certification cycle: as it explained in this case, "[w]e recommend borrowers certify their employment annually or anytime their employment changes," and "qualifying monthly payment counts are updated when new employment certification forms are processed." Bowman Decl. Ex. C, ECF No. 16-5 at 9. A processing time that exceeds the certification interval breaks the system the agency designed: Ms. Scheeren was due to submit her next annual form before the Department decided her last one, and by now would have submitted four. The Department's rule of reason cannot be slower than the cycle its own program prescribes.

**b. Factor Four: An Empty Record Cannot Support a Competing-Priorities Defense**

Factor four is the government's factor to prove, and it has offered nothing. The queue-jumping rationale of *In re Barr Laboratories, Inc.*, 930 F.2d 72, 75 (D.C. Cir. 1991), presupposes a queue: an order advancing one applicant harms others only if the record shows an orderly line the plaintiff would cut. The D.C. Circuit requires the government to "explain[] with precision the personnel or resource tradeoffs that it faces"; "generalized appeals to resource constraints" do not suffice, because "agency resources always are limited." *Afghan & Iraqi Allies Under Serious Threat Because of Their Faithful Serv. to the U.S. v. Blinken,* 103 F.4th 807, 819 (D.C. Cir. 2024). Where nothing suggests the requested relief "would improperly harm competing agency priorities," factor four favors the plaintiff. *Ramirez v. Blinken*, 594 F. Supp. 3d 76, 95 (D.D.C. 2022) (Cooper, J.). This Court's decisions declining to reorder consular visa queues rest on the premise that consular processing capacity is "a zero-sum game," such that relief for one applicant "would necessarily mean additional delays for other applicants." *Mohammadalizadeh Shabestary v. Sanders,* No. 24-cv-0362 (CRC), slip op. at 11 (D.D.C. Dec. 16, 2024) (Cooper, J.) (quotation omitted). Nothing of the kind exists here: the Department has identified no queue, no capacity constraint, and no

competing applicant whose adjudication would be displaced. The Department decided her first two applications and left the third undecided. Compelling a decision reorders no line; it asks the agency to do for Application 3 what it already did, twice, for its predecessors.

**c. Factors Three and Five: The Delay Withholds a Statutory Entitlement and Costs Plaintiff Payments Every Month it Continues**

Factors three and five ask whether human welfare, rather than mere economic regulation, is at stake, and "the nature and extent of the interests prejudiced by delay." TRAC, 750 F.2d at 80. The Department may answer with *Da Costa*, where the financial harms of waiting for an investor visa could not tip these factors. *Da Costa v. Immigr. Inv. Program Off.*, 80 F.4th 330, 345 (D.C. Cir. 2023). The analogy fails at the threshold: in *Da Costa* the financial harm was incidental to an immigration benefit; here the withheld benefit *is* the financial relief — a congressionally mandated cancellation of debt that the Secretary "shall" provide. 20 U.S.C. § 1087e(m)(1). Ms. Scheeren's prejudice is not the uncertainty of waiting; it is the extraction of payments on loans that, on her showing, were dischargeable years ago totaling at least $16,140.71, Scheeren Decl. ¶ 11; the continued presence of approximately $40,000 in debt on her credit profile that only grows larger as interest accrues, *id.* ¶ 12; and the household planning that a debt of that size forecloses, *id.* ¶ 13. Where the record "discloses a nexus between human welfare and 'economic' considerations," these factors favor the plaintiff, *Muwekma Tribe*, 133 F. Supp. 2d at 39, and the permanent or compounding loss of a statutory benefit weighs heavily, *Gomez v. Trump*, 485 F. Supp. 3d 145, 196 (D.D.C. 2020). Prejudice under factor five is cumulative by its terms and each month of delay adds interest accrual and monthly payments of more than $700 when the current forbearance ends. Scheeren Decl. ¶ 14. There is also a quieter prejudice: her qualifying employment ended in February 2017, and every year of delay pushes the certifying officials and records further into the past. An agency that recommends annual

certification because contemporaneous verification is easier cannot treat the aging of that evidence as harmless.

**d. Factor Six: The Record Does Not Rule Out Impropriety**

Finally, "the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed." *TRAC*, 750 F.2d at 80. Ms. Scheeren does not ask the Court to find bad faith. But factor six confirms that nothing in her showing depends on it — and the record's unexplained features (a complaint dismissed by reference to a feedback case that does not exist; grounds that shifted from letter to letter; an application held open through four annual cycles while its twins were decided) would make any presumption of mere administrative oversight difficult to sustain.

**REMEDY**

Plaintiff requests that the Court (1) vacate the denials of PSLF Application 2 and Reconsideration Request 2; (2) declare that the Fairfax Bar Association was a qualifying "public service organization" under 34 C.F.R. § 685.219 (2021) throughout Ms. Scheeren's employment; (3) remand with instructions to adjudicate Ms. Scheeren's pending applications consistently with that declaration within 30 days, with any discharge effective as of the date of her 120th qualifying payment, as reflected in the Department's payment records once her FBA employment is credited, Scheeren Decl. ¶ 10; ECF No. 16-5 at 11, and with refund of payments made after that date; and (4) to the extent not mooted by (1)–(3), order the Department to decide PSLF Application 3 within the same 30 days, as Count II independently requires.

**I. Vacatur is Required**

Vacatur is the ordinary consequence of unlawful agency action: the APA provides that a reviewing court "shall . . . set aside" action found arbitrary, capricious, or not in accordance with

law. 5 U.S.C. § 706(2). Indeed, the this Court has vacated individual PSLF denials before, *Am. Bar Ass'n,* 370 F. Supp. 3d at 25–34. Whether to depart from that default turns on "the seriousness of the order's deficiencies (and thus the extent of doubt whether the agency chose correctly) and the disruptive consequences of an interim change that may itself be changed." *Allied-Signal, Inc. v. U.S. Nuclear Regulatory Comm'n*, 988 F.2d 146, 150–51 (D.C. Cir. 1993). Both factors point the same direction here.

First, there is no "serious possibility that the [agency] would be able to develop a reasoned explanation on remand..." *Nat'l Parks Conservation Ass'n v. Jewell*, 62 F. Supp. 3d 7, 21 (D.D.C. 2014). Every ground the agency stated is contradicted by the record it certified, and the Department has since abandoned the only merits ground it ever gave: its brief concedes the FBA's 501(c)(6) nonprofit status, ECF No. 16-1 at 8, and its declarant concedes that operating a public law library "meets the criteria" of the regulation's enumerated services, Bowman Decl. ¶ 6. An agency cannot substantiate on remand a conclusion its own submissions refute. Second, vacatur works no disruption. This case concerns one borrower's entitlement to a discharge Congress directed the Secretary to provide; setting aside the denials unsettles no program, no third parties, and no reliance interests.

## II. The Court Should Resolve the Legal Question and Remand with Instructions

When a reviewing court concludes that an agency erred, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985). In this Court, that ordinary course is vacatur and remand — as when this Court vacated individual PSLF denials and returned them to the Department. *Am. Bar Ass'n*, 370 F. Supp. 3d at 25–34. What Ms. Scheeren asks is that the

Court do what reviewing courts do in every case: decide the legal question presented — and then remand with instructions that give the decision effect.

The legal question is whether the FBA satisfied 34 C.F.R. § 685.219(b) (2021) which is a question of regulatory interpretation and application on which the Court exercises independent judgment, *Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024), and which the Declaratory Judgment Act and the APA empower it to answer. 28 U.S.C. § 2201; 5 U.S.C. § 703; see Compl., Prayer for Relief ¶¶ A–B, J. The regulation asked two things of a private organization: that it provide an enumerated public service, and that it "[i]s not a business organized for profit, a labor union, or a partisan political organization." 34 C.F.R. § 685.219(b) (2021). The Department's own filings concede both. Its brief describes the FBA as "classified as a 501(C)(6) entity." ECF No. 16-1 at 8. Its declarant concedes that operating a public law library "meets the criteria" of the regulation's enumerated services. Bowman Decl. ¶ 6. And its own exhibit confirms that eligibility "is not about the work a borrower does but is based on who their employer is." ECF No. 16-5 at 8. On conceded facts, the regulation permits one answer: the FBA was a qualifying employer throughout Ms. Scheeren's employment. The Court should declare it. Nor is there any risk that compliance becomes optional. Once qualifying employment is declared and the FBA years are credited against the 210 eligible payments the Department's records already reflect, ECF No. 16-5 at 11, the statute's command is ministerial: the Secretary "shall cancel" the qualifying balance. 20 U.S.C. § 1087e(m)(1). A discrete action an agency "is required to take" is compellable under 5 U.S.C. § 706(1). *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004).

The remand should then take the form this Circuit uses when the record leaves the agency nothing to relitigate: vacatur with instructions to proceed consistently with the Court's opinion.

*See Haselwander v. McHugh*, 774 F.3d 990, 1000–01 (D.C. Cir. 2014) (vacating and remanding for proceedings consistent with an opinion that resolved the dispositive question on undisputed evidence). Here, "consistent with the opinion" has concrete content: with the qualifying-employer question declared, all that remains is arithmetic from the Department's own payment-tracking records. *See* ECF No. 16-5 at 11.

In addition, the Court should maintain supervision over the case following remand. It is well within the Court's equitable authority to vacate the denials and issue a remand that is short, specific, and supervised rather than an open-ended do-over. The instructions should provide that the Department adjudicate Ms. Scheeren's pending applications within 30 days; that any adverse determination contain an adequate, contemporaneous explanation applying § 685.219(b) (2021) to the certified record; that the parties file a joint status report at the close of the period; and that the Court retain jurisdiction.

Retained jurisdiction ensures that if the Department withholds the discharge the statute commands, the Court can compel it without ever administering the program. The consequential relief follows in course: the Department's own materials provide that payments made after the 120th qualifying payment "will be refunded," ECF No. 1-1 at 27, with the discharge effective as of the date of her 120th qualifying payment as reflected in the Department's records once the FBA employment is credited. Scheeren Decl. ¶ 10; ECF No. 16-5 at 11. That the ordered relief results in the return of money is no obstacle: an order undoing unlawful agency action is not a money judgment, even where payment follows as its byproduct. *Bowen v. Massachusetts*, 487 U.S. 879, 910 (1988).

Even were the Court to leave the qualifying-employer determination to the Department in the first instance, the remand should carry the same terms — thirty days, a contemporaneous explanation applying the 2021 regulation to the certified record, retained jurisdiction.

**CONCLUSION**

For the foregoing reasons, the Court should deny Defendants' Motion for Summary Judgment, ECF No. 16, and grant Plaintiff's Cross-Motion for Partial Summary Judgment. The Court should (1) vacate the Department's denials of PSLF Application 2 and Reconsideration Request 2; (2) declare that the Fairfax Bar Association was a qualifying public service organization under 34 C.F.R. § 685.219 (2021) throughout Ms. Scheeren's employment from March 2008 through February 2017; (3) remand with instructions that the Department adjudicate Ms. Scheeren's pending applications consistently with that declaration within 30 days, that any adverse determination contain an adequate, contemporaneous explanation applying the 2021 regulation to the certified record, that any discharge be effective as of the date of Ms. Scheeren's 120th qualifying payment as reflected in the Department's records, with refund of payments made thereafter, and that the parties file a joint status report at the close of that period, the Court retaining jurisdiction; (4) order the Department to decide PSLF Application 3 within the same period; and (5) decline the Department's suggestion of a stay. A proposed order is submitted herewith.

Dated: September 9, 2026

Respectfully submitted,
*/s/ William Austin Hinkle*
William Austin Hinkle (Bar ID 90043756)
Public Goods Practice LLP
1502 W 7th St., STE 100
Erie, PA 16502
(215) 931-9240
austin@publicgoodspractice.com
*Counsel for Plaintiff*